LaCourse *v.* Kiesel, Appellant.

Argued November 16, 1950. Before DREW, C. J., STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Martin F. Papish,* for appellants.

*Donald W. Hedges,* with him *Russell Conwell Cooney* and *Mancill, Cooney, Ott & Semans,* for appellees.

OPINION BY MR. JUSTICE LADNER, January 2, 1951:
From the findings of the learned chancellor supported by adequate evidence and approved by the court en banc, we state the following facts: The defendants, Anna M. Kiesel, William Kiesel, Jr., and Ruth R. Kiesel, hereinafter referred to as individual defendants, being owners of premises 101 Montgomery Avenue, Bala Cynwyd, Pa., engaged Louis Traiman Auction Company of Pa., hereinafter referred to as Traiman Company, to act as their agent in advertising and selling their property at public auction. Traiman Company prepared a handbill advertising the property which contained among other statements, the following: "An unusually desirable property, ideal as a private home, excellent for a professional man, also splendid for apartments which would bring in a handsome income in addition to providing beautiful living quarters for the owner." William Kiesel, Jr., one of the owners, informed Traiman Company that the property was zoned R-5 which permits apartments, that there were apartments in the property and that other properties in the area, including the adjoining property were apartment houses. The handbill prepared by Traiman on this information, among others, was read to prospective bidders by representatives of Traiman at the auction sale held June 29, 1948, on the premises.

The plaintiffs, A. J. LaCourse and Benjamin M. Snyder, Jr., attended the auction sale, had examined the handbill advertising the sale and heard it read by.

the auctioneer. They also made an inspection of the premises and then entered into competitive bidding and the property was knocked down to them as the highest bidder at $33,000. The vice president of the Traiman Company then presented a form of agreement of sale to plaintiffs for execution which was executed by Traiman as agent for the owners and by the purchasers, who paid a deposit of $5,000 at that time. The agreement of sale, among other things, contained a clause that the property was sold "free and clear of all liens and encumbrances, except as otherwise herein stated, but to be subject to all existing restrictions, easements, zoning regulations, and, ordinances, statutes and regulations of any constituted public authority, now in force or which may be passed prior to final settlement." The agreement also contained the provision that the title should be "good and marketable and such as will be insured at regular rates by any responsible Title Insurance Company" etc.

Thereafter the plaintiffs applied to the Commonwealth Title Company of Philadelphia, and from the information certificate sent them learned for the first time that the restrictions prohibited the use of the property other than as a single residence. Prior to the receipt of this information the plaintiffs had engaged an architect to prepare plans for the conversion of the property into apartments, which services were discontinued later, because of the restriction and a bill for $215 paid him. Upon learning of the restriction plaintiffs promptly offered to rescind the agreement of sale or to allow the defendant owners additional time to remove the restrictions. Defendants were not able to have the restrictions removed and called upon plaintiffs to make settlement subject to the restriction. Plaintiffs then brought a bill in equity against the defendants for cancellation of the agreement of sale and return of

the deposit money as well as the sum of $215 paid to the architect and $30 paid to the title company. The chancellor found for the plaintiffs and entered a decree nisi against the individual defendants which requires them to return to the plaintiffs the $5,000 deposit money with interest and the further sum of $245 above mentioned, to which decree nisi exceptions were filed as well as to the adjudication and findings, all of which were considered by the court en banc and dismissed, and the decree nisi confirmed absolutely. From said action of the court we have this appeal.

The appellants argue first that the representation in the auctioneer's circular read to the bidders was not a material misrepresentation. The learned court held that it was material. We find no difficulty in agreeing with the court below. The language of the circular was equivalent to a statement that there were no legal obstacles in the way of the use of the property being sold for apartments. Any fair-minded person would naturally assume from the statement that the property was "splendid for apartments which would bring in a handsome income in addition to providing living quarters for the owner," that the restrictions mentioned did not prohibit such use. Otherwise, neither the auctioneer nor the sellers would have been justified in making the statement complained of. Counsel for the appellants argues that neither the owners nor the auctioneer knew that the restrictions prohibited said use and therefore made the misrepresentation innocently. But the owners were bound to know what the restrictions provided. Moreover, whether the auctioneer or the owners *knew* that the representation was false has been repeatedly held in this jurisdiction to be a matter of no consequence. A vendor has no right to make such a statement of which he has no knowledge: *Braunschweiger et al v. Waits,* 179 Pa. 47, 36 A. 155 (1897); *Jack v.*

*Hixon,* 23 Pa. Superior Ct. 453, 456 (1903); 3 *Pomeroy's Equity Jurisprudence, 5th ed., sec.* 889. So also we have repeatedly held there is no obligation on the part of the purchasers to examine public records before purchase: see *Lake v. Thompson,* 366 Pa. 352, 77 A. 2nd 364; *Merritz v. Circelli,* 361 Pa. 239, 64 A. 2d 796 (1949); *Suraci v. Ball,* 160 Pa. Superior Ct. 349, 51 A. 2d 404 (1947).

Next the appellants' learned counsel argues there was no evidence to warrant the chancellor's finding that the plaintiffs relied on the misrepresentation. To this argument it may be answered that not only is it to be presumed from the very materiality of the misrepresentation that the person deceived relied upon it (Restatement, Contracts, Sec. 479) but there is abundant other evidence to support the chancellor's conclusion. Both plaintiffs testified they discussed with William Kiesel, Jr., the adaptability of the property into apartments and Mr. LaCourse testified that Mr. Traiman, Sr., stated to him just before the auction commenced that the property "could be readily converted into 6 beautiful apartments." To which may be added the fact that plaintiffs engaged an architect, John B. Thompson, August 6th or 7th, to prepare plans for converting the property into apartments, which, according to the testimony of the title officer was about a month before the information certificate was issued from which the plaintiffs learned of the restrictions against such use.

Next it is argued that because there was no "clear indubitable proof" that defendants had actual knowledge of the restrictions limiting the use of the property to a single residence the defendants were innocent of fraud and plaintiffs without showing fraud could not rescind the contract of sale because defendant could not be restored to status quo. The defendants here were

not innocent of fraud. A material misrepresentation of an existing fact confers on the party who relies on it the right to rescind whether the defendants here actually knew the truth or not, especially where, as here, they had means of knowledge from which they were bound to ascertain the truth before making the representation. Misrepresentations made under such circumstances *are* fraudulent and have been variously called implied, constructive or legal fraud or fraud in Equity: see 37 C. J. S. pp. 209 and 214; 3 Pomeroy's Equity Jurisprudence, 5th ed., p. 482 and p. 489; but even where innocently made, if material, are nevertheless grounds for rescission: Restatement, Contracts, sec, 476, comment b.

Finally it is argued that the plaintiffs, having signed a written agreement of sale, their evidence of the material misrepresentation is inadmissible to contradict the writing because of the parol evidence rule as laid down in *Gianni v. Russell and Co., Inc.*, 281 Pa. 320, 126 A. 791 (1924). The learned chancellor was correct in ruling that the purpose of the evidence here was not to alter or vary the terms of the written instrument, but to strike the writing down just as though it had never been in existence. In this he followed *Suraci v. Ball*, 160 Pa. Superior Ct. 349, 51 A. 2d 404 (1947), where Judge RENO said at page 353, " 'It is always competent to aver and prove that an engagement in writing was induced by fraudulent oral representations of material facts that affect the consideration.' " In so ruling he followed *Feuerstein v. New Century Realty Co.*, 304 Pa. 271, 275, 156 A. 110 (1931), where the matter was definitely settled. See also *Merritz v. Circelli*, 361 Pa. 239, 242, 64 A. 2d 796 (1949); *Zettlemoyer v. Bloch*, 329 Pa. 205, 198 A. 80 (1938); *Sutton v. Morgan*, 158 Pa. 204, 27 A. 894 (1893). And in *Ohlbaum v. Mayer*, 285 Pa. 260, 131 A. 858 (1926), the

right to rescind was upheld even though the misrepresentation made by an agent was unauthorized by his principal, for a principal by accepting the benefits of a contract cannot disavow the means by which his agent procured it.

These cases, and others which may be cited to the same effect, the appellants' counsel seeks to distinguish because the representations there made were referred to as "false and fraudulent," and that as in this case there was no fraud, the principle does not apply. But the word "fraud" is a generic term which embraces a great variety of actionable wrongs. As hereinbefore pointed out the fraud may be actual or constructive, accordingly as it is knowingly or innocently made, 37 C. J. S. p. 209, and where, as here, it is made by one having means of knowledge at hand, he cannot be heard to say he did not know what he should have known. Misrepresentation under such circumstances is fraud in law as well as in equity.

The so-called "integration clause" which appears on the reverse side of the agreement does not by its terms preclude proof of the misrepresentation here complained of because such representation does not "contradict, vary or add to the terms of the agreement." The evidence thereof was admissible to justify the rescission.

At the bar the learned counsel argued also that the restrictions against use of the property for apartments are no longer effective because they have become obsolete by reason of the changed character of the immediate neighborhood. We are well aware of the fact that it has been held that a court of equity may refuse to enforce restrictions when they become obsolete or cease to be of any advantage to those for whose benefit they were imposed due to the resistless evolution of time: *Henry v. Eves,* 306 Pa. 250, 255, 159 A. 857

(1932); *Peoples-Pittsburgh Trust Co. v. McKinley-Gregg Automobile Co.,* 353 Pa. 110, 44 A. 2d 295 (1945). But the defendants agreed to convey a marketable title and "such as will be insured at regular rates by any responsible Title Insurance Company." The evidence shows that the Commonwealth Title refused to insure against these restrictions. Moreover if the plaintiffs took a deed subject to them they might be exposed to the hazard of a law suit and this renders a title not marketable: *Reighard's Estate,* 192 Pa. 108, 43 A. 413 (1899). According to the record the plaintiffs before rescinding the sale, gave an opportunity to defendants to have the restrictions released but they were apparently unable to do so.

Decree affirmed at costs of appellants.