## Mooney et ux. v. Specter et al.

*Francis X. Quinn,* for plaintiffs.

*Tobias Goldberg* and *I. Bernard Fenner,* for defendants.

OPINION SUR PRELIMINARY OBJECTIONS
TO COMPLAINT

ALESSANDRONI, J., January 9, 1951.—This is a bill in equity to declare an agreement for the sale of real estate null and void, to restrain defendants from enforcing its provisions in any manner against plaintiffs, and to secure an order for the repayment of sums paid on account by plaintiffs to defendants.

The bill avers that defendants, Harry Specter and Mary B., his wife, the owners of a certain apartment building consisting of eight apartments and six garages, authorized defendant, William R. Rueter, to act as their agent in selling the property. It is further averred that Rueter, to induce plaintiffs to purchase this property as an investment, gave them a written prospectus setting forth the rental for each unit and an itemization of the operating expenses. Plaintiffs, after inspecting the property and relying upon the financial statement, executed an agreement to buy the property for $27,700, which agreement was executed by the Rueter Realty Company, as agent for the registered owners, on July 19, 1950. Two days thereafter, under date of July 21, 1950, defendants, Harry Spec-

ter, and Mary B. Specter, affixed their signatures approving the agreement of sale. In accordance with the terms of the agreement plaintiffs paid defendant Rueter the sum of $2,600. Within a month thereafter plaintiffs aver that they secured information from the Office of the Housing Expediter showing material and substantial differences between the authorized maximum rent for the various units and the rents stated as the prevailing rentals in the financial statement or prospectus which defendant Rueter had delivered to plaintiffs. Plaintiffs thereupon demanded a cancellation and rescission of the agreement of sale and a repayment of the deposit, but defendants refused to comply with this demand.

Defendant Rueter and defendants Harry Specter and Mary B., his wife, filed separate preliminary objections. We summarily dismiss the objection that plaintiffs had an adequate remedy at law. This bill in equity was filed and served prior to the date set forth in the agreement as the final day for settlement. Moreover, it is clear that the averments establish at least equitable fraud, and that equity has jurisdiction to cancel and rescind agreements, the execution of which were procured or induced by fraud. There are averments of plaintiffs' reliance upon the false representations made by defendants, the discovery of the misrepresentations, the demand for cancellation and rescission of the contract, and, finally, defendants' refusal to do so. See A. L. I. Restatement of the Law of Contracts §471.

It is well established that where one is induced by fraud to make a contract, he may either affirm the contract and sue for damage upon discovery of the fraud, assert the misrepresentations by way of a counterclaim, or repudiate the contract and institute an action for rescission: Browning v. Rodman, 268 Pa. 575.

It is also contended that the written agreement of sale deleted from the printed provisions thereof a sentence which provided that the seller at the time of settlement would produce and deliver to the purchaser the landlord's copy of the registration with the Office of Price Administrator. Defendants appear to contend that the act of deleting this sentence from the written agreement should have put plaintiffs on notice that the prospectus containing a schedule of the rentals did not set forth the maximum rentals under the prevailing governmental regulations, but instead set forth rentals which exceeded the lawful limit. It is then contended that plaintiffs were under a duty to inquire at the Office of the Housing Expediter before executing the agreement of sale.

This contention is disingenuous. We cannot conceive that a portion of a printed agreement that is deleted still constitutes an effective warning signal of dishonesty. It is well established that in such circumstances plaintiffs were justfied in relying upon the truth of the representation even though by an affirmative investigation they could have ascertained the falsity of that representation: Erman-Howell & Co., v. Meltzer, 58 York 91.

The schedule of the rentals and the operating statement of an apartment house is a most material fact and constitutes one of the primary factors upon which judgment and action by a purchaser is predicated. In addition to the physical condition of a property such as this, its economic value determines its selling price. The economic value of this apartment house and the attendant garages was a fact exclusively within the knowledge of defendants, and they were under an affirmative duty to state that fact with candor and accuracy.

Defendant Rueter further complains that he was only acting in the capacity as agent and that his princi-

pal was known. When plaintiffs executed the agreement of sale the principal was not disclosed. Defendant Rueter acted for "the registered owners". Moreover, defendant Rueter was the one who received the deposits of $2,600, which plaintiffs seek to recover, and from the bill of complaint there is no indication as to what he did with that money. We must assume that he still has it in his possession. Finally, under the facts averred Rueter was a principal actor in the fraud which is alleged to have been committed and is liable jointly and severally with his principals.

We are of the opinion that the preliminary objections should be dismissed, and defendants should be required to file an answer to this bill of complaint. It is only upon bill and answer and proofs that a proper disposition of this cause of action can be had.

### *Order*

Now, to wit, January 9, 1951, the preliminary objections of defendants are dismissed and defendants are ordered to file an answer to the merits within 20 days from the date hereof.

### ADJUDICATION

FENERTY, J., March 7, 1951.— . . . Stated directly and bluntly, it is the contention of defendants, as shown by their requests for findings, that inasmuch as the clause in the agreement requiring the production of OPA registration certificates was deleted, plaintiffs had no right to rely on the statements in the typewritten prospectus handed them by defendant, Rueter, prior to the execution of the agreement, but should have suspected something wrong and should have verified this suspicion by an examination of the records of OPA before signing and paying the down-payment money. A contention somewhat similar to this was rejected by our Supreme Court, in the case of LaCourse

v. Kiesel, 366 Pa. 385. The reason given plaintiffs for the deletion was that "there was no copy of the OPA registration at the office." That this statement was untrue is shown by defendant's ability to produce registration certificates for two apartments when plaintiffs made their request for rescission and return of the down-payment money. These certificates were produced at the trial by defendants.

The facts are clear. Harry Specter and Mary B. Specter, owners of an apartment building, No. 3235 N, 17th Street, Philadelphia, engaged William R. Rueter, trading as Rueter Realty Company, to act as their agent to sell the property. Rueter prepared, on his own letter head, a typewritten prospectus showing receipts and expenditures from the operation of the building. It appeared upon this statement, as far as it is relevant to this proceeding, that four apartments were occupied by the tenants, on monthly leases, as follows: First floor middle, $75; second floor front, $75; third floor front, $75; second floor, rear building, $45. This implied that the leases were legal, under the regulations of the Office of Price Administration, National Housing and Rent Act of 1947, 61 Stat. at L. 197, 50 App. U. S. C. §1894: Furman v. Karr, 61 D. & C. 501-02. These statements were false, and their falsity was known to Rueter. We give no credence to his testimony that he was not familiar with the regulations. He is an experienced real estate broker, and he had, a short time before the present transaction, represented the Specters, the other defendants, in the purchase of the property in question.

Some time in July 1950, but prior to July 19th, plaintiffs began their negotiations with Rueter for the purchase of the property. Mary C. Mooney, one of the plaintiffs, called at Rueter's office and was supplied with the prospectus, which at that time did not have on it the written notations now appearing, and was

taken on an inspection tour through the building by Rueter's employe. Plaintiffs offered $26,000 and an agreement for this amount was prepared, subject to the approval of the owners. The owners (Specter), disapproved and set the price at $27,700, which was acceptable to plaintiffs, who paid Rueter $2,600 on account thereof. Before the execution of the agreement, the clause relating to the delivery of OPA registration certificates was deleted, because Rueter did not have them "in the office". Rueter did not tell plaintiffs that the leases were illegal, being in violation of the Housing and Rent Act, supra, and that the rents being collected were not authorized by the OPA. Some time during August 1950, plaintiffs made inquiry at the office of OPA and discovered that the apartment listed on the prospectus as first floor middle, $75, was not registered; that apartment, second floor front, was registered at $50, and not $75 as listed on the prospectus; that apartment, third floor front, was registered at $45, and not $75, as listed on the prospectus; that apartment, second floor, rear building, was registered at $23, and not $45, as listed on the prospectus. When plaintiffs called Rueter's attention to this, one of Rueter's employes made the written notations now appearing upon the prospectus and produced two registration certificates for apartments, other than the ones in question. Incidentally, while plaintiffs make no complaint as to these apartments, the registration certificates show that they also were misrepresented on the prospectus; one being registered at $45 and listed on the prospectus at $51.75, the other registered at $34.50 and listed at $39.65. Even the written notation "occupied by owner" was false. The owners, Specters, did not live in the building. There was no credible evidence offered by defendants to overcome the authenticity of the registration certificates placed in evidence by plaintiffs. In fact, defendants admitted their au-

thenticity but objected to their relevancy. Plaintiffs then rescinded the contract and demanded that defendants return the down-payment money, $2,600. Defendants refused the demand, whereupon plaintiffs, on September 1, 1950, prior to the date of settlement, filed the present bill of complaint.

After hearing the witnesses and having reviewed all the evidence, we are convinced that Rueter willfully formulated a scheme to deceive prospective buyers, casually stating to plaintiffs that the clause relating to registration certificates was deleted because he had none "in the office" when he had at least two, which he did not produce until plaintiffs made their complaint in August 1950. That plaintiffs were deceived is evidenced by their prompt action when they discovered the fraud. Since the material misrepresentations were proved, it will be presumed, in the absence of facts to show the contrary, that the contract was made in reliance thereon: New York Life Insurance Company v. Brandwene et ux., 316 Pa. 218, 224.

Harry Specter and Mary B. Specter, the other defendants, did not testify. There is no evidence connecting them with the fraud of Rueter, but inasmuch as they "affirmed the agent's contract they are affected with the false statements (and the concealment) by which he procured it": Ohlbaum v. Mayer et ux., 285 Pa. 260, 263-64. See also Littler, Exec., et al. v. Dunbar et al., 365 Pa. 277. They cannot repudiate the fraud of their agent and obtain the benefit of the contract: Meyerhoff, trading as M. S. Meyerhoff, v. Daniels, 173 Pa. 555, 558-59.

"A material misrepresentation of an existing fact confers on the party who relies on it the right to rescind whether the defendants here actually knew the truth or not, especially where, as here, they had means of knowledge from which they were bound to ascertain the truth before making the representation. Misrepre-

sentations made under such circumstances *are* fraudulent and have been variously called implied, constuctive or legal fraud or fraud in Equity: see 37 C. J. S. pp. 209 and 214; 3 Pomeroy's Equity Jurisprudence, 5th ed., p. 482 and p. 489; but even where innocently made, if material, are nevertheless grounds for rescission: Restatement, Contracts, sec. 476, comment b": LaCourse v. Kiesel, 366 Pa. 385, 390.

There is another matter which gives rise to grave suspicion: The deletion from the agreement of the clause relating to the production of registration certificates. This was an "unusual method of transacting the business (William Goldstein Company v. Joseph J. and Reynold H. Greenburg, Inc., et al., 352 Pa. 259, 264) of selling real estate. The reason for this, given by Rueter, is specious; there was ample time before the settlement date to procure duplicates from the OPA. It is obvious that the production of the certificates would have disclosed the whole scheme. Rueter asks us to conclude from this that plaintiffs must have had notice of the real facts before they signed the agreement, but this is effectually refuted by the prompt action taken by plaintiffs when they learned the truth.

Rueter alleged "new matter" in the nature of a counterclaim against plaintiffs, requesting a judgment in his favor and against plaintiffs in the sum of $1,172, partly for expenses incurred and partly for commissions lost because of the failure of plaintiffs to complete the settlement. The claim for expenses is based upon a written authorization from plaintiffs to Rueter to do all the usual things "necessary to complete settlement". This, of course, was complementary to the agreement of sale and, inasmuch as the failure to complete settlement was occasioned by his fraud, he cannot recover anything on it. There is a familiar rule of equity that a wrongdoer may not gain anything by his own wrong. The claim for lost commissions is based upon

598

an alleged breach of contract by plaintiffs. We have found that plaintiffs were entitled to rescind the contract. . . .

### Decree Nisi

And now, July 6, 1951, this cause having come on and having been heard, it is ordered, adjudged and decreed as follows:

1. The written agreement of sale of premises 3235 North Seventeenth Street, Philadelphia, which is exhibit B of the bill of complaint, between John Mooney and Mary C. Mooney, plaintiffs, and Harry Specter, Mary B. Specter and William R. Rueter, defendants, is declared null and void.

2. The claim of William R. Rueter, defendant, against John Mooney and Mary C. Mooney, plaintiffs, is dismissed.

3. Judgment is hereby entered in favor of John Mooney and Mary C. Mooney, plaintiffs, and against Harry Specter, Mary B. Specter and William R. Rueter, defendants, in the sum of $2,600, with interest thereon from July 21, 1950.

4. Defendant, William R. Rueter, shall pay the costs.