Shotz et ux. v. Sherzer et ux.

*Schmidt, Green, Harris* and *Higginbotham,* for plaintiffs.

*Herman Steerman,* for defendants.

SLOANE, J., August 30, 1954.—Plaintiffs, Stanley Shotz and Suzanne W. Shotz, aver they took title to 2028 North Twelfth Street, Philadelphia, by deed dated March 2, 1953; defendants Leon Sherzer and Rose Sherzer were the grantors. On the same date a purchase-money mortgage for $3,500, covering the property, was entered into with plaintiffs as mortgagors and defendants as mortgagees.

The agreement of sale for the property was entered into on December 19, 1952. The agreement provided, inter alia, that if it was not legal to have six apartments with a maximum rental of $190 a month, the agreement should be void and deposits refunded. Prior to the agreement defendants or their agents knew that notices had been sent by the city department of licenses and inspections that the six apartments were in violation of zoning laws and regulations and that a maximum of only two apartments was permitted. Defendants knew prior to the settlement that only two apartments were permitted.

By willful and malicious fraud defendants failed to inform plaintiffs that the existence of six apartments was in violation of zoning; defendants falsely informed plaintiffs that six apartments were legally permitted on the premises.

Plaintiffs also aver that defendants were parties to a contract, of which plaintiffs and the Philadelphia

Title Insurance Company were beneficiaries, in which defendants represented that no notices had been given them within the past six months concerning the condition of the premises; these representations were false and fraudulent in that notices of the zoning violation had been given them within six months.

Plaintiffs relied on defendants' representations that six apartments were permitted, and in October 1953 they first received notice of a violation. Defendants were under a duty to disclose the material fact that the existence of six apartments was a zoning and housing violation; had they known this, plaintiffs would not have entered the agreement of sale.

Plaintiffs' expenses in the operation of the property, including reasonable repairs, maintenance and managing, have exceeded the income from it by $900.

Plaintiffs' prayers are:

(a) The purchase-money mortgage from plaintiffs to defendants be declared void and decreed satisfied.

(b) Defendants be ordered to repay to plaintiffs the sum of $2,600 which plaintiffs paid in cash at the settlement.

(c) Defendants be ordered to pay plaintiffs $900, the excess of expenses over income in the management of the premises by plaintiffs and any future excess of expense over income.

(d) Defendants be enjoined and restrained from transferring or conveying the purchase-money mortgage given them by plaintiffs.

(e) If defendants have made transfer of plaintiffs' mortgage, they be ordered to pay over the amount of consideration received or to be received therefor.

(f) Upon defendants' compliance with all the above-mentioned orders, plaintiffs be decreed to execute a reconveyance of the property to defendants.

(g) For such further relief as may be proper.

*Answer*

Defendants deny the agreement of sale provided that in the event it was not legal to have six apartments with a maximum rent of $190 per month the agreement should be void and the deposit refunded. They aver the agreement provided the total maximum rent ceilings would be at least $190 and that, in the event the maximum rents allowed for the six apartments was less than $190, the agreement was to be void and the deposits refunded.

Defendants deny they willfully, maliciously and fraudulently failed to inform plaintiffs that six apartments were in violation of the zoning and housing regulations. They aver they took title to the property in 1946, that six apartments were then on the premises and that tenement license fees for that number were paid every year. Defendants admit being notified by the Philadelphia Zoning and Housing Authority that the premises were not zoned for six apartments, but were of the opinion that it was only necessary to make application to the zoning board to have six apartments allowed on the premises. Other properties of the same type, on the same block, specifically 2027 North Twelfth Street, have been legally zoned for six apartments.

Defendants deny they falsely informed plaintiffs that six apartments were legally permitted on the premises. Their only representation concerning the six apartments was that they were all registered with the office of rent stabilization and the total maximum rent for the six registrations was at least $190.

Defendants further deny they made any false or fraudulent representations to plaintiffs by giving their affidavit to the Philadelphia Title Insurance Company in that the affidavit refers only to notices received by defendants which would affect the title to the premises, and not to notices of the kind plaintiffs allege defend-

ants received. The affidavit was directed to the title insurance company only, to induce it to issue its policy insuring title to the premises.

Defendants do not know whether plaintiffs were inexperienced in real estate transactions, as they aver. Plaintiffs were represented by a real estate agent. Also, the agreement provided that the buyers take subject to the zoning ordinance and any other act or ordinance affecting the use of, or improvements to, the premises.

Defendants admit they knew, prior to the agreement of sale, that six apartments were in excess of the maximum allowed by the zoning law, but deny duty on their part to inform plaintiffs of this fact. Defendants deny that even if they had not known that six apartments were in excess of the maximum allowed that the sale would be voidable because of a mutual misunderstanding of a mutual fact. The agreement of sale provided that plaintiffs were buying subject to zoning ordinances.

Defendants state they are without knowledge of plaintiffs' income and expenses in operation of the property and demand proof thereof at trial.

Defendants pray dismissal of the complaint.

### Findings of Fact

1(a). On December 14, 1952, defendants Leon Sherzer and Rose Sherzer, owners of 2028 North Twelfth Street, Philadelphia, caused to be inserted in the Philadelphia Inquirer an advertisement reading as follows:

"12th St., N., 2028, 6 apts., oil ht., good cond., $6500. Bargain. Vi 4-0932."

(b) Plaintiffs, Stanley Shotz and Suzanne W. Shotz, saw the advertisement and then, through a licensed real estate broker retained by them, one Martin Grossman, negotiated with defendants for the purchase of the property.

2. On December 19, 1952, an agreement of sale for the property was executed, between Martin Grossman as agent for the owners-sellers, and plaintiffs as purchasers, for the price of $6,100, $2,600 to be paid in cash and $3,500 to remain as a purchase-money mortgage. This agreement of sale was approved by defendants in writing.

3. Martin Grossman acted for both parties in the consummation of the agreement of sale and at the settlement, with full disclosure of his agency for both sides.

4(a). The agreement of sale has this typewritten provision:

"In the event that these Registrations [O.P.A. and/or O.R.S.] show a total legal maximum rent for the six apartments of less than $190 per month, this agreement shall be null and void and deposits shall be refunded."

(b) The agreement has these printed provisions:

"Premises are subject to . . . provisions of the Zoning Ordinance and/or any other act or ordinance affecting the use of, and improvements, to said premises". and "This agreement represents the entire agreement between the parties hereto. . . . There are no collateral or other oral agreements and understandings."

5(a). At the time the agreement of sale was executed, and to the date of trial (June 1, 1954), the property could not be operated legally as a six-apartment building because of zoning requirements. The maximum number of permissible dwelling units was two.

(b) Despite the zoning prohibition, the property for a number of years was operated by defendants (and previous owners) as a six-apartment building. Office of Price Administration registrations for six apartments were entered with total registered rents for the six units of approximately $190 per month.

6(a). Defendants knew before they executed the agreement of sale that the property violated zoning in maintaining six apartments; they had received notices to that effect from the appropriate city bureaus.

(b) Defendants did not at any time inform plaintiffs either directly or through their agent, that six apartments in the property was a violation of zoning.

(c) Defendants were aware, at all times prior to settlement, of the lack of knowledge on the part of plaintiffs and their agent, of the true zoning status of the property; that plaintiffs and their agent were acting under a mistake of fact that six apartments were legally permissible upon the premises.

7. Settlement for the property was made March 2, 1953, when plaintiffs made the required remaining cash payment and executed a purchase-money mortgage to defendants, as mortgagees, for $3,500.

8(a). In October 1953 plaintiffs for the first time learned that operation of the property as a six-apartment building was in violation of zoning; that only two apartments were permitted.

(b) On November 28, 1953, plaintiffs brought the present action in equity for rescission of their transaction with defendants.

## Discussion

Plaintiffs bought the property, 2028 North Twelfth Street, Philadelphia, from defendants and now seek to rescind the transaction because the property was misrepresented to them as to a material fact. They were led to believe they were buying a six-apartment building and got a two-apartment building instead. In physical arrangement the property was a six-apartment building but defendants were so operating in violation of zoning. Legal operation was limited to two apartments. Defendants had received notices of the violation; they knew the situation and admittedly never disclosed it to plaintiffs or the agent who was

negotiating for them. Plaintiffs did not find it out until several months after they got their deed to the property. They brought the present action about a month thereafter and no question of laches is argued or is present.

And no one can argue that the matter of a six-apartment building or a two-apartment building is not of weighty importance. Defendants rely principally on the "parol evidence rule". They contend plaintiffs are bound by the provisions of the written agreement of sale and cannot vary or alter the terms. They point to the printed provisions that the property is subject to existing zoning ordinances and that the agreement represents the entire agreement between the parties—the so-called "integration clause". But it is settled that where the action is for rescission because of material misrepresentation, the rule has no application, where the purpose is not to vary the writing but, rather and further, to strike it down. See LaCourse v. Kiesel, 366 Pa. 385, 390-91 and cases there cited. The "integration clause" likewise does not preclude proof of misrepresentation or nondisclosure which justifies rescission of the contract: LaCourse v. Kiesel, 366 Pa. 385, 391.

Defendants say they made no misrepresentations concerning zoning, and the testimony does not establish affirmative statements by them that the building could be operated legally as a six-apartment building. But defendants deliberately did try to and did succeed in creating that impression. Their original advertisement says six apartments and the agreement of sale says:

"In the event that these Registrations show a total legal maximum rent for the six apartments of less than $190.00 per month, this agreement shall be null and void and deposits shall be refunded".

Thus there were representations calculated to cause

plaintiffs reasonably to believe they were getting a building with six legal apartments. It clearly involved a material factor that affected the consideration: La-Course v. Kiesel, 366 Pa. 385, 388. And the fact that the zoning status is a matter of public record would make no difference. In the circumstances, plaintiffs were not required to examine public records before purchase. See Lake v. Thompson, 366 Pa. 352, 357; Suraci v. Ball, 160 Pa. Superior Ct. 349.

Defendants argue they paid tenement house license fees on the basis of six apartments and that the OPA had registered the six apartments for a total rental of about $190, that this indicates they gave plaintiffs all they were entitled to get. It is, however, clear that plaintiffs were not trying to buy a building that was operating illegally and taking their chances on continuing the violation; they did not know of the zoning violation and an illegally operating building was not the subject matter of the contract as to them. Inspection of the property would not disclose the true situation; in fact, the very physical appearance of the premises constituted misrepresentation under the circumstances. Cf. Woldow v. Dever, 374 Pa. 370, 374. The case is, therefore, quite different from Abrams, Inc., v. Wolkov, 371 Pa. 44; there, even the most casual inspection would disclose that each apartment had one bathroom instead of the two as advertised in the handbill. Here, on the other hand, inspection would not disclose the zoning violation.

If the case is considered from the standpoint of nondisclosure (admittedly and at least the situation here), and not as one of affirmative misrepresentation, plaintiffs are entitled to rescission. The A. L. I. Restatement of the Law of Contracts, §472, sets forth this rule:

"Sec. 472. When Lack of Disclosure Is Not Privileged.

"(1) There is no privilege of non-disclosure, by a party who . . .

"(b) knows that the other party is acting under a mistake as to undisclosed material facts, and the mistake if mutual would render voidable a transaction caused by relying thereon . . .

"(2) Where non-disclosure is not privileged it has the effect of a material misrepresentation."

This section of the restatement is followed in Pennsylvania. See Goldstein Company v. Greenberg, Inc., et al., 352 Pa. 259, 267. Here, defendants, knowing the fact that operation of six apartments is illegal, and also aware of the fact that plaintiffs had no knowledge of it, failed to disclose it to plaintiffs. The right to maintain six apartments legally was obviously a most material factor in the value of the property (see Mooney et ux. v. Specter et al., 77 D. & C. 589, 592), and if neither sellers nor buyers had known zoning was being violated, the mutual mistake would make the contract voidable. Though the mistake here was unilateral on the part of the buyers only, the circumstances were such that nondisclosure by the vendors was not privileged.

Actually, this is not a case of merely allowing the buyers to deceive themselves. The sellers assisted in the deception, starting with the wording of the advertisement, and by the form of the agreement where it was stated that the "6 apartments" brought in $190 per month. It is a specious argument to say (as defendants do in their answer) that all they agreed to do was convey a six-apartment building that brought in $190 per month (under its OPA registrations) and that is what they did; that the fact that the six apartments were there was enough, regardless of the illegality. It could rather be argued that defendants failed to carry out the agreement of sale according to its terms, that they were obliged to convey a legal six-

apartment building, since the law will presume the parties contracted over a legal, rather than an illegal, subject matter.

I conclude that plaintiffs can rescind because there was material misrepresentation, or at least nonprivileged nondisclosure. Plaintiffs chose rescission; they should consequently be put back into a position as though the contract had never been made, as we say, status quo ante. To accomplish this result they should get back their cash expenditures in making the purchase and have the purchase-money mortgage they executed canceled and marked satisfied. They ought also to account for all items of income and expense in their operation of the property since the date they took title, to determine what sum should be paid by defendants to plaintiffs, or plaintiffs to defendants, to restore the original position. Upon completion of the adjustment by the appropriate money payments and cancellation of the mortgage, plaintiffs are under the duty of conveying the property to defendants by proper deed subject only to such conditions or restrictions as in the deed to them.

### Conclusions of Law

1. Plaintiffs are entitled to rescind the agreement of sale and the entire transaction between plaintiffs and defendants for the property 2028 North Twelfth Street, Philadelphia.

2. Restoration of plaintiffs and defendants to a status quo ante should be brought about by the payment to plaintiffs by defendants of the cash expenditures made by plaintiffs in purchasing the property and by cancellation of the purchase-money mortgage in the face amount of $3,500, and the further adjustment between the parties of the amount shown in a proper account by plaintiffs for income and expenses in their operation of the property from the time of their deed to the present. Upon completion of the above

plaintiffs should reconvey the property to defendants by a proper deed.

### Decree Nisi

And now, August 30, 1954, upon consideration of the above cause, it is ordered, adjudged and decreed as follows:

1. The written agreement of sale dated December 19, 1952, and the entire transaction for the property 2028 North Twelfth Street, Philadelphia, between Stanley Shotz and Suzanne W. Shotz, plaintiffs, and Leon Sherzer and Rose Sherzer, defendants, is declared rescinded as if it had never been.

2(a). Plaintiffs, within 20 days hereof, shall file written account showing all items of income and expense in their operation of the property 2028 North Twelfth Street, Philadelphia, from March 2, 1953, to the date of the account.

(b) Upon approval of the account, a settlement shall be had between the parties upon the following terms:

Defendants shall repay to plaintiffs the cash sums paid by plaintiffs in the purchase of the property and shall also cause the $3,500 purchase-money mortgage from plaintiffs to defendants covering the property to be canceled and marked satisfied; such further sums as shall be shown payable by defendants to plaintiffs or plaintiffs to defendants in adjustment of the amounts determined from plaintiffs' proper accounting of income and expenses shall be paid. Upon completion of settlement between the parties upon the foregoing terms plaintiffs as grantors shall execute and deliver their deed of conveyance forthwith to defendants as grantees, clear of encumbrance; and subject only to conditions and restrictions as in the deed to plaintiffs.

3. Defendants shall pay the costs.

The prothonotary is directed to enter this decree nisi and to notify the parties or their attorneys of record; if no exceptions are filed within 20 days thereafter, the decree nisi shall be entered as the final decree, as of course.