**Jonathan GROWALL, Appellant**

v.

**Patrick J. MAIETTA and Katherine Maietta, His Wife.**

Superior Court of Pennsylvania.

Argued Jan. 30, 2007.

Filed July 26, 2007.

Reargument Denied Oct. 4, 2007.

---

Fred C. Jug, Jr., Pittsburgh, for appellant.

Thomas B. Earhart, Pittsburgh, for appellees.

BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and TAMILIA, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Jonathan Growall ("Growall") appeals from the judgment entered May 23, 2006, in favor of Growall and against Pat-rick J. Maietta in the amount of $17,548.00.[1] We affirm.

¶ 2 On October 2, 2002, Patrick J. Maietta ("Pat Maietta") and his wife Katherine Maietta ("Kathy Maietta") agreed to sell Growall the property located at 1630 Rutherford Street, Pittsburgh, for $80,000, and executed an agreement to that effect. The closing occurred on December 2, 2002. At some point after taking possession of the premises, Growall alleges he discovered a water leakage problem in the basement which was not disclosed prior to closing, culminating in the filing of a civil complaint on July 15, 2004. In the complaint, Growall stated claims for breach of contract, fraudulent misrepresentation, violation of the Real Estate Seller Disclosure Law ("RESDL"), 68 Pa.C.S.A § 7301 et seq., and violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1 et seq.

¶ 3 Following an arbitration hearing on November 8, 2004, Growall was awarded $12,000 against both Pat Maietta and Kathy Maietta. The Maiettas filed notice of arbitration appeal, and the case proceeded to a jury trial from February 2nd through the 9th, 2006, presided over by the Honorable W. Terrence O'Brien. On January 9, 2006, the jury found for Growall and against Pat Maietta only, in the amount of $17,548.00. The jury found no liability on the part of Kathy Maietta.

¶ 4 Post-trial motions filed by both parties were denied on May 3, 2006, and this timely appeal followed on June 2, 2006. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on July 13, 2006; and in

---

1. In his notice of appeal, Growall purports to appeal from the May 3, 2006 order denying post-trial motions. However, appeals are not properly taken from orders denying post-trial motions or exceptions. A judgment or final decree must be entered on the trial court docket. See Pa.R.A.P. 301; Pa.R.C.P. 227.4; see also Harvey v. Rouse Chamberlin, Ltd., 901 A.2d 523, 524 n. 1 (Pa.Super.2006) (citations omitted) (orders denying post-trial motions are not appealable; it is the subsequent entry of judgment that is the appealable order when a trial has occurred). We have corrected the caption accordingly.

response to a request from appellant Growall, a supplemental opinion on August 18, 2006. Growall was not ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Maiettas did not file a cross-appeal.

¶ 5 Growall brings the following issues for this court's review on appeal:

I.    Whether a spouse is liable for a material defect that was not disclosed when she signed the Agreement of Sale and Seller Disclosure Statement and testified at trial that she did not read all of the Seller Disclosure Statement and relied on her husband to complete the form?

II.   Whether the law imposes a duty to know the condition of real property on a Seller and the Seller may be liable as a result of signing the Seller Disclosure Statement and failing to inform the buyer the disclosure was not based on personal knowledge but reliance on her spouse?

III.  Whether the trial court erred in granting a compulsory non-suit on the Unfair Trade Practices and Consumer Protection law claim as the UTPC[PL] applies to transactions for residential real estate?

Growall's brief at vi.

¶ 6 In his post-trial motions, Growall requested the court enter judgment n.o.v. (*non obstante verdicto*) in favor of Growall and against Kathy Maietta, arguing the evidence established Kathy Maietta's liability as a matter of law.

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict....

*Advanced Telephone Systems, Inc. v. Com–Net Professional Mobile Radio, LLC,* 846 A.2d 1264, 1279 (Pa.Super.2004), appeal denied, 580 Pa. 687, 859 A.2d 767 (2004) (citation omitted).

¶ 7 "Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact.... A JNOV should be entered only in a clear case." *Id.* "[T]he entry of a judgment notwithstanding the verdict ... is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury." *Education Resources Institute, Inc. v. Cole,* 827 A.2d 493, 497 (Pa.Super.2003), *appeal denied,* 577 Pa. 721, 847 A.2d 1286 (2004) (citation omitted).

¶ 8 First, Growall argues that Kathy Maietta's failure to disclose the water problem in the basement apartment violated the RESDL. As the evidence clearly established that Kathy Maietta was not aware of any water leak in the basement until after closing, we must disagree.

¶ 9 Prior to our discussion, a more thorough examination of the evidence adduced at trial is in order. Pat Maietta testified that he and Kathy Maietta purchased the house at 1630 Rutherford from his mother in 1996. (Notes of testimony, 2/2/06 at 37.) The house was divided into three apartments, including one in the basement. (*Id.* at 33.) In April 2002, the Maiettas decided to sell the house, and contacted Jim Sproat ("Sproat"), a real estate broker. (*Id.* at 46.) The Maiettas were already familiar with Sproat, as he handled the rental of their apartments and collection of

the rent in exchange for a management fee. (*Id.* at 46, 123.)

¶ 10 Sproat had the Maiettas fill out a seller disclosure statement, which both Pat Maietta and Kathy Maietta signed and dated April 18, 2002. (*Id.* at 47–48, 127, 137; Plaintiff's Exhibit 2.) Paragraph 4(b) of the disclosure statement asks, "Are you aware of any water leakage, accumulation or dampness within the basement, garage or crawl space?" This is marked "no." Paragraph 4(c) of the disclosure statement asks, "Do you know of any repairs or other attempts to control any water or dampness problem in the basement, garage or crawl space?" This is likewise marked "no." Paragraph 6(a) asks, "Are you aware of any past or present water leakage in the house or other structure?" This is marked "no."

¶ 11 Sometime in June 2002, several months after signing the seller disclosure statement, Pat Maietta became aware of a water leakage problem in the basement apartment. (Notes of testimony, 2/2/06 at 23.) Specifically, water came out from under the baseboard onto the floor when the first floor apartment's toilet was flushed. (*Id.* at 23–24.) Pat Maietta called a plumber who snaked the lines. (*Id.* at 50.) Pat testified the problem appeared to be resolved, and he had no further complaints of water leakage in the basement apartment until he heard from Growall in September or October 2003. (*Id.* at 52, 58.)

¶ 12 Ylber Kusari ("Kusari") testified that he moved into the basement apartment in August 2002. Kusari testified the carpet was damp and there was a dehumi-

difier running. (*Id.* at 4–5.) After several weeks, the carpet dried out and Pat Maietta removed the dehumidifier. (*Id.* at 6, 13–15.)[2]

¶ 13 In October 2002, the sales agreement was signed; and in December 2002, the closing occurred. Pat Maietta admitted that he never advised Growall about the water problem in the basement apartment until Growall called him in September or October 2003. (*Id.* at 50, 58.) Pat Maietta testified the June 2002 incident was the only time he experienced water leakage in the basement apartment. (*Id.* at 41.)

¶ 14 Kathy Maietta testified she was not aware of any water problem in the basement apartment prior to the sale of the property to Growall. (Notes of testimony, 2/8/06 at 6.) She did not become aware of the problem until January 2004, when Growall sent the Maiettas a letter requesting over $46,000 in damages. (*Id.* at 7; Plaintiff's Exhibit 8.) Kathy Maietta testified the house had belonged to her husband's family, and she was relatively uninvolved. (Notes of testimony, 2/8/06 at 13.) Pat was responsible for maintaining the house and dealing with the tenants; Kathy had never met any of the tenants. (*Id.* at 13, 20–21, 25.) Pat never informed Kathy about any water problem at the house, and Kathy was unaware of any plumber having come in response to a water leak. (*Id.* at 14, 47.)

¶ 15 This testimony was corroborated by Pat Maietta, who testified Kathy was not involved in the routine maintenance of the property and that he never informed his wife about the June 2002 water leak.

---

**2.** Pat Maietta testified the dehumidifier was only there for a few days, rather than weeks, and that the conversation with Kusari concerning dampness in the apartment occurred in June 2002, when Kusari first came to look at the apartment. (*Id.* at 25–26, 63–64.)

However, as the verdict winner as against Pat Maietta, Growall is entitled to the more favorable of any such conflicts in testimony. *Zeffiro v. Gillen,* 788 A.2d 1009, 1013 (Pa.Super.2001).

(Notes of testimony, 2/2/06 at 59–60.) Kathy Maietta never knew the plumber had been called about a leak. (*Id.* at 75–76.) Kathy Maietta did admit that she did not review every question on the seller disclosure form, and relied on her husband to fill it out. (Notes of testimony, 2/8/06 at 66–68, 74.) Kathy Maietta stated, "When the disclosures were available, was made out, my husband filled it out, and I presumed that he knew all the information, and I pretty much signed it after he had filled it out." (*Id.* at 66.)

¶ 16 The RESDL,[3] 68 Pa.C.S.A. § 7301 *et seq.*, provides that "Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form)." 68 Pa.C.S.A. § 7303. The RESDL further provides, in pertinent part, "If information disclosed in accordance with this chapter is subsequently rendered inaccurate prior to final settlement as a result of any act, occurrence or agreement subsequent to the delivery of the required disclosures, the seller shall notify the buyer of the inaccuracy." 68 Pa.C.S.A. § 7307.

> The seller is not obligated by this chapter to make any specific investigation or inquiry in an effort to complete the property disclosure statement. In completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect.

68 Pa.C.S.A. § 7308. "A seller shall not be liable for any error, inaccuracy or omission of any information delivered pursuant to this chapter if: (1) the seller had no knowledge of the error, inaccuracy or omission...." 68 Pa.C.S.A. § 7309(a)(1).

¶ 17 In addressing Growall's RESDL claim, we first note that at the time the disclosure statement was completed in April 2002, the information therein was accurate. The water problem in the basement apartment did not occur until June 2002, and there is no allegation that a problem existed before then. Therefore, Growall's claim lies under Section 7307, which requires a seller to notify a buyer prior to closing if any information in the disclosure statement is subsequently rendered inaccurate. 68 Pa.C.S.A. § 7307.

¶ 18 Stated simply, Kathy Maietta could not disclose what she did not know. There is no evidence to refute her testimony, and that of Pat Maietta, that Kathy Maietta did not know about the water leak until well after final settlement. As Judge O'Brien states, the verdict slip submitted to the jury asked whether each defendant knew or had reason to know of a material defect in the premises at time of sale; the jury found that Pat Maietta did, but Kathy Maietta did not. (Trial court opinion, 7/13/06 at 2.) The jury's determination that Kathy Maietta neither knew nor had reason to know of the water leak exonerated her under the RESDL. (*Id.*) We are not a fact-finding body and will not usurp the jury's function. The jury obviously found Kathy Maietta's testimony to be credible in this regard.

¶ 19 Growall's reliance on *Anderson v. Harper*, 424 Pa.Super. 161, 622 A.2d 319 (1993), *appeal denied*, 535 Pa. 659, 634 A.2d 222 (1993), is misplaced. In that

---

**3.** The RESDL became effective December 20, 2001 and, therefore, applies to the real estate transaction at issue in this case.

case, the court specifically found that both Mr. and Mrs. Harper were aware of the ongoing problem with their septic system, and failed to disclose such to the buyers of the property. The *Harper* court also found that where the sellers of property make repairs to a serious and dangerous latent condition on the land absent the proper permits and government approval, as did the Harpers, they cannot be found to have justifiably believed the problem to have been corrected. *Id.* at 323–325. *Harper* is clearly distinguishable from the facts of the case *sub judice.*[4]

■ ¶ 20 Next, Growall argues that Kathy Maietta had an absolute duty to know the condition of her property, and violated this duty by failing to investigate or, in the alternative, failing to disclose her lack of knowledge. We reject this argument for several reasons.

¶ 21 First, the RESDL specifically states that the seller is not obligated to make any specific investigation or inquiry in completing the property disclosure statement, and that a seller is not liable for any error, inaccuracy or omission of which he or she had no knowledge. 68 Pa.C.S.A. §§ 7308, 7309. Although Growall is correct that Kathy Maietta admitted she did not carefully review the form and relied on the information provided by her husband, as he was primarily responsible for overseeing the property, we reiterate that the form was accurate at the time it was completed. Again, there is no allegation that the problem existed before June 2002, two months after the property disclosure statement was filled out. Even if Kathy Maietta had conducted an inspection of the basement apartment or questioned her husband about its condition pri-

or to completing the disclosure statement, her answers would have been the same.

¶ 22 Growall argues that although the jury found Kathy Maietta never knew about the water leak, she breached her duty of disclosure by failing to inform Growall of her lack of knowledge. (Growall's brief at 18.) In effect, Growall argues since Kathy Maietta was not involved in the day-to-day upkeep of the property and relied on her husband, she had a duty to disclose this fact. However, the Maiettas had lived in the house at 1630 Rutherford, including in the basement apartment for several years. (Notes of testimony, 2/8/06 at 11–12, 19–20; 2/2/06 at 33–34.) They never experienced any problems with water leaks or flooding while living there. (*Id.*) Therefore, Kathy Maietta did have an independent basis for her response.

¶ 23 In further support of his argument that Kathy Maietta should be held to essentially a strict liability standard, Growall relies on several cases which, to the extent they still represent controlling authority after the enactment of the RESDL, we find to be distinguishable. In *LaCourse v. Kiesel,* 366 Pa. 385, 77 A.2d 877 (1951), the plaintiffs bought a property at auction which was specifically advertised as "splendid for apartments." *Id.* at 386, 77 A.2d at 878. They later learned that, in fact, the property was in an area zoned for single-family dwellings. *Id.* at 387, 77 A.2d at 879. Our supreme court held that the misrepresentation, though innocently made, was material and grounds for rescission of the sales contract:

Counsel for the appellants argues that neither the owners nor the auctioneer knew that the restrictions prohibited said use and therefore made the misrepresentation innocently. But the owners

---

4. *Harper,* as well as other cases relied on by Growall discussed *infra,* was decided prior to the enactment of the RESDL; and therefore,

its continued viability in this area may rightly be called into question.

were bound to know what the restrictions provided. Moreover, whether the auctioneer or the owners *knew* that the representation was false has been repeatedly held in this jurisdiction to be a matter of no consequence. A vendor has no right to make such a statement of which he has no knowledge. . . .

*Id.* at 388, 77 A.2d at 879 (citations omitted) (emphasis in original). The court also noted that there is no obligation on the part of purchasers to examine public records before purchase. *Id.* at 389, 77 A.2d at 880 (citations omitted).

¶ 24 In *Miller v. Bare,* 457 F.Supp. 1359 (W.D.Pa.1978), also relied upon by Growall, the defendant sellers of the property, Edward and Margaret Bare, innocently misrepresented the boundary lines of the property, leading the plaintiff buyers to believe it was 7,000 square feet larger than it actually was. *Id.* at 1361. In addition, before moving into the house, the buyers discovered evidence of chronic water damage which had been previously concealed by a work bench. *Id.*

¶ 25 Following *LaCourse, supra,* the *Miller* court held that although the evidence established neither Edward nor Margaret Bare was aware of the actual boundary lines, as landowners they were bound to know "basic facts" concerning their property and therefore were liable for damages. *Id.* at 1366.

> The court's opinion in [*LaCourse* ] reflects a strong public policy against allowing a person who has ready access to information about real estate to make a statement about it and then to claim 'he did not know what he should have known,' and holds such persons to what is in effect a standard of strict liability.

*Id.* at 1364, citing *LaCourse, supra* at 391, 77 A.2d at 881. The *Miller* court also found both husband and wife liable for the cost of repairs to correct the drainage problem, as it found both were aware of it. *Id.* at 1366.

¶ 26 We determine that *LaCourse* and the reasoning of *Miller* do not control the instant case. First, we cannot hold a seller to a strict liability standard concerning innocent misrepresentations where the RESDL does not impose such an absolute duty. Second, both *Miller* and *LaCourse* involved "basic facts" about the property readily ascertainable by the sellers; *i.e.,* zoning restrictions and boundary lines. We cannot say that Kathy Maietta's ignorance of an isolated incident of water damage/flooding in the basement constitutes such a "basic fact" as to trigger absolute liability. In addition, while the *Miller* court did find Margaret Bare to be liable for failure to disclose the flooding problem, it specifically found that she was "well aware" of it, which is not the case here. *Miller, supra* at 1366.

¶ 27 Furthermore, the plaintiffs in *LaCourse* were seeking rescission of contract, not monetary damages. Growall seeks out-of-pocket losses in the form of repairs, loss of rent, etc.; he did not sue to rescind the contract. There appears to be no basis for such damages under a claim of innocent misrepresentation in Pennsylvania. *See Bortz v. Noon,* 556 Pa. 489, 506–507, 729 A.2d 555, 564–565 (1999) ("A claim for a misrepresentation, innocently made, to the extent recognized in this Commonwealth, is an equitable doctrine based upon contract principles supporting equitable recision to make a contract voidable by the innocent party. . . ."). Although the district court in *Miller* awarded ordinary damages based upon a claim of innocent misrepresentation, it did so by relying on Section 552C of the Restatement (Second) of Torts, which has not been adopted in Pennsylvania. *Miller, supra* at 1362–1363; Restatement (Second) of Torts § 552C (1977) (reporter's note).

¶ 28 Growall also argues *Miller* applies in that *Miller* held Margaret Bare liable under an agency theory for her husband's fraudulent misrepresentations concerning the flooding problem. First, the *Miller* court found that the plaintiff-buyers established proof of *scienter* on the part of the principal (wife) at the time of her husband's misrepresentation, as required in Pennsylvania. *Miller, supra* at 1366. The *Miller* court found that Margaret Bare was present when Edward Bare, acting as her agent, indicated there were no major problems with the house; as Margaret Bare was aware of the drainage problem hidden by the work bench, by her silence she participated in the fraud perpetrated by her husband. *Id.* There is no evidence of that here. Second, as the trial court observes, Growall never set forth a principal/agent theory of liability. (Trial court opinion, 8/18/06 at 1–2.) Agency was neither pleaded in Growall's complaint nor included in his proposed jury interrogatories. (*Id.*) Therefore, the argument is waived.[5]

¶ 29 Finally, Growall argues the trial court erred in granting compulsory non-suit on his UTPCPL claim. We disagree.

A motion for compulsory non-suit allows a defendant to test the sufficiency of a [plaintiff's] evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.

*Mahan v. Am–Gard, Inc.,* 841 A.2d 1052, 1057–1058 (Pa.Super.2003), appeal denied, 579 Pa. 712, 858 A.2d 110 (2004), quoting *Poleri v. Salkind,* 453 Pa.Super. 159, 683 A.2d 649, 653 (1996), *appeal denied,* 548 Pa. 672, 698 A.2d 595 (1997) (citations omitted).

¶ 30 "When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered." *Poleri, supra* (citations omitted). "A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff." *Id.; see also Gigus v. Giles & Ransome, Inc.,* 868 A.2d 459, 461–462 (Pa.Super.2005), *appeal denied,* 586 Pa. 758, 895 A.2d 550 (2006).

¶ 31 The UTPCPL provides:

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201–9.2(a). The court may award treble damages as well as costs and attorney fees. *Id.*

¶ 32 "A claimant under this section must not only have suffered an ascertainable loss as the result of an 'unfair or deceptive

---

5. Growall also argues that defendants never pled in their answer or new matter that Kathy Maietta lacked knowledge of the water problem. As the trial court states, it was Gro-wall's burden under the RESDL to prove that defendants knew or had reason to know of the defect. (Trial court opinion, 7/13/06 at 2.)

act,' but also must be: a 'person,' who made a 'purchase,' *'primarily for personal, family, or household purposes.'"* *Valley Forge Towers South Condominium v. Ron–Ike Foam Insulators, Inc.,* 393 Pa.Super. 339, 574 A.2d 641, 645 (1990), *affirmed,* 529 Pa. 512, 605 A.2d 798 (1992) (emphasis added). There is no question that the purchase or lease of a home, condominium, or apartment for *residential* purposes comes under the protections of the UTPCPL. *Id.* at 648 (citations omitted); *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488, 491–493 (1987). The trial court granted compulsory non-suit on the basis that Growall purchased the property primarily as an investment rather than to live in, intending to make money from the property by leasing the apartments to tenants. (Trial court opinion, 7/13/06 at 2–3.)

¶ 33 With regard to Growall's UTPCPL claim, first, we note that his trial testimony does not appear in the certified record, nor in the reproduced record. Growall did not order his testimony to be transcribed. (*Id.* at 1 n. 1, 2; order, 3/7/06.) Therefore, this court has no way of knowing for what purpose he purchased the property or whether he intended to make it his residence. Accordingly, Growall's claim is deemed waived. *See Cade v. McDanel,* 451 Pa.Super. 368, 679 A.2d 1266, 1268–1269 (1996) (failure by appellant to insure the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issues sought to be examined), citing *Smith v. Smith,* 431 Pa.Super. 588, 637 A.2d 622, 623–624 (1993), *appeal denied,* 539 Pa. 680, 652 A.2d 1325 (1994); *Keystone Technology Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223, 1228 n. 6 (Pa.Super.2003) (an appellate court is limited to considering only those facts duly certified in the record on appeal and, for purposes of appellate review, what is not of record does not exist) (citation omitted).

¶ 34 Growall points to the testimony of Walter Conte ("Conte"), the appraiser, who testified that Growall told him he was living there as of June 2003. (Notes of testimony, 2/6/06 at 61.) However, Conte also testified he appraised it as an investment, income-producing property at Growall's request. (*Id.* at 40.) In addition, Judge O'Brien recalls Growall testifying he purchased the three-unit building as an "investment" and "possibly" to live in. (Trial court opinion, 7/13/06 at 3.) As this is not contradicted by any testimony from Growall that appears anywhere in the record, and as the building contained three individual apartment units, the record supports the trial court's finding that Growall did not purchase the property primarily for residential purposes. *See Lal v. Ameriquest Mortgage Co.,* 858 A.2d 119, 124–125 (Pa.Super.2004) (Section 201–9.2 of the UTPCPL not applicable to property purchased as an investment property rather than for personal, family, or household purposes).

¶ 35 Judgment affirmed.