605 A.2d 1260

**Arthur J. BOYLE and Joanne W. Boyle, Individually and as Husband and Wife, and Boyle Land and Fuel Company, Appellants,**

v.

**Roberta W. ODELL, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1991.

Filed April 8, 1992.

B. Patrick Costello, Greensburg, & Kenneth L. Hirsch, Pittsburgh, for appellants.

H. Reginald Belden, Jr., Greensburg, for appellee.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The plaintiff-appellants, Arthur J. Boyle and Joanne W. Boyle, husband and wife, and Boyle Land and Fuel Company, instituted the instant proceedings to seek rescission of an agreement under which they purchased parcels of real property in Hempfield Township, Westmoreland County. The defendant-appellee, Roberta W. Odell, sold the properties to the plaintiffs. In addition to rescission, the plaintiffs requested that the trial court issue an order that their purchase price be returned, and that they be awarded damages flowing from losses they experienced in connection with the transaction. They also sought punitive damages. The trial court, sitting without a jury, considered a joint partial statement of the case, and also heard testimony from witnesses. Thereafter, the court issued a decision and order that a verdict be entered for the defendant. After timely exceptions were submitted and argued, the trial court issued a final decision and order denying the exceptions, and all relief requested by the plaintiffs. This appeal followed.

The relevant facts are not in dispute. Prior to 1959, Flora Belle Martin, the mother of defendant Roberta W. Odell, owned land on both sides of Route 119 in Hempfield Township. On May 11, 1959, Mrs. Martin contracted to sell her property on the east side of the road to Mr. and Mrs. Natale Carbone, Jr. The sales agreement entered into between Mrs. Martin and Mr. and Mrs. Carbone included the following provision:

"The Seller further gives and grants to the Buyers the first option to purchase any of the land or property which Seller might have and own on the West side of State Highway Route 119 at any time she or her heirs might wish to sell the same."

That sales agreement was recorded in the Office of the Recorder of Deeds of Westmoreland County.

Mr. and Mrs. Carbone entered into an agreement dated June 13, 1959 with Car–Man, Inc., wherein they assigned their rights in the May 11, 1959 sales agreement with Flora

Belle Martin, to that corporation. Car–Man, Inc. was owned by the Carbone family. This assignment agreement was recorded in Westmoreland County. Pursuant to the May 11, 1959 sales agreement, and the subsequent Carbone June 13, 1959 assignment agreement, on June 26, 1959, Mrs. Martin executed a deed conveying the property east of Route 119 to Car–Man, Inc. That deed was also recorded.

Between 1966 and 1975, Mrs. Martin conveyed separate parcels of her property on the west side of Route 119 to her daughter, the defendant Roberta W. Odell, and to her son, Sherwood C. Martin. Subsequently, Sherwood C. Martin conveyed all of his interests in the property to his sister, Mrs. Odell.

In April 1985, Mrs. Odell entered into a sales agreement to sell the property on the west side of the road to plaintiffs Arthur J. and Joanne W. Boyle. That sales agreement covered three separate parcels of land, and provided for a selling price of $600,000.00. *Inter alia*, the sales agreement stated:

> "Seller shall, on the date hereinafter specified, by deed of General Warranty, well and sufficient grant and convey unto Buyer, in fee simple, clear of all liens and encumbrances, except as hereinafter set forth [1], good and marketable title (and such as will be insurable by any responsible title insurance company at regular rates) to the following (hereinafter referred to as "The Property")."

Mr. and Mrs. Boyle assigned part of their rights under the sales agreement to plaintiff Boyle Land and Fuel Company, which has been identified as a corporation owned by Mr. Boyle.

Prior to the closing on the property, the plaintiffs obtained title insurance policies from Commonwealth Land Title Company. Neither the title report nor the policy disclosed the existence of any right of first refusal to purchase the property by Mr. and Mrs. Carbone or by Car–

---

**1.** The sales agreement did not include any reference to the Carbone first option to purchase, or anything similar to it, as a lien or encumbrance on the property.

Man, Inc. Further, the evidence indicated that Mr. and Mrs. Boyle had no notice of the alleged existence of such a right of first refusal at any time before they took title to the property.

The closing on the parcels west of Route 119 took place on July 3, 1985, when defendant Roberta Odell conveyed part of the land to Mr. and Mrs. Boyle, with the remainder being deeded to plaintiff Boyle Land and Fuel Company. The deeds recited that defendant Odell was granting and conveying the parcels:

"SUBJECT TO all easements, estates, covenants, conditions, exceptions and reservations shown in prior instruments of record.

Grantor covenants that she will warrant generally the property hereby conveyed."

These deeds were also recorded in the Office of the Recorder of Deeds in Westmoreland County.

On July 15, 1985, the attorneys for Mr. and Mrs. Boyle received notice from counsel for Car–Man, Inc. of the 1959 option which had been conveyed to Mr. and Mrs. Carbone by Mrs. Odell's mother, Flora Belle Martin, and which was subsequently assigned to Car–Man, Inc. Moreover, Car–Man, Inc. declared an intent to exercise the right to buy the property, at a price paid during prior transactions which resulted in the conveyance of the interests of Sherwood C. Martin to defendant Roberta Odell. Thereafter, Car–Man, Inc. instituted proceedings in the Court of Common Pleas of Westmoreland County against Mrs. Odell, as well as against the plaintiffs herein, to enforce its claimed option to purchase the property on the west side of Route 119 which had been conveyed to the plaintiffs by Mrs. Odell. The plaintiffs made a demand that Ms. Odell rescind her sale of the property to them, and asked that she return their purchase price, and pay costs they had incurred in the transaction. The Boyles also discontinued remodelling work they had already begun on buildings on the property. They never actually resided on the land, as they had previously planned.

The plaintiffs instituted the instant case on July 23, 1985. After reciting the relevant history of proceedings, they asserted that Mrs. Odell had breached her agreement to provide them with a clear title to the property. In a second count in the complaint, they alleged that she fraudulently and intentionally executed and delivered deeds to them which did not convey a title in accordance with the terms of the prior agreement to sell the land. They sought an order of rescission, the return of the purchase price, and damages, including legal fees and other expenses they experienced in the transaction. With regard to the fraud claims, they also asserted a claim for punitive damages.

By agreement of the Boyles and Mrs. Odell, while this action was proceeding, the court entered an order that Mrs. Odell was to attend to the physical preservation of the property while the case was pending, and the Boyles agreed to pay the taxes and insurance premiums on the property. Further, the order indicated that the winner of the litigation was to be reimbursed for expenses incurred in accordance with the division of responsibilities which had been agreed to by the parties.[2]

In May 1990, Mrs. Odell and the Boyle's title insurer settled with the Carbones and Car–Man and received a quitclaim deed from Car–Man, Inc., extinguishing all rights with regard to the purchase option which had been extended by Flora Belle Martin in 1959. The quitclaim deed from Car–Man to Mrs. Odell was recorded. Thereafter, Mrs. Odell tendered quitclaim deeds to Mr. and Mrs. Boyle and to Boyle Land and Fuel Company, in order to eliminate any defect in their titles which had been created by the existence of the 1959 first right to purchase. The tender was not accepted by the plaintiffs, but Mrs. Odell thereafter recorded her quitclaim deeds in Westmoreland County.

In this setting, the case came before the trial court for resolution. Essentially, the plaintiffs maintained their re-

2. The plaintiffs sued their title insurance company under the policy and for negligence. That suit has been held in abeyance pending the outcome of the instant litigation.

quests for rescission and for damages. Defendant Odell contended that the quitclaim deeds which had been procured and recorded satisfied her obligations in full to the plaintiffs.

The trial court determined that there was no evidence that Mrs. Odell had any knowledge of the 1959 first option to purchase which had been agreed to by her mother in the sales agreement with Mr. and Mrs. Carbone.[3] On that basis, the trial court determined that the defendant had not engaged in intentional and fraudulent conduct as alleged by plaintiffs in the second count of the complaint. Accordingly, the court held that the plaintiffs were not entitled to punitive damages or any of the other requests for relief based upon their allegations that Mrs. Odell had engaged in intentional and fraudulent conduct.

The trial court also concluded that the plaintiffs were not entitled to any relief on their breach of contract claims, which were raised in the first count of their complaint. Despite the stated assumption that the right of first refusal was an encumbrance which would cause the title to the property in issue to be "nonmarketable," and the further assumption that the "subject to" clause in the deed did not put the plaintiffs on notice that the conveyances were subject to the first right of refusal even though it was contained in the previously recorded Martin–Carbone sales agreement, the trial court declared that the plaintiffs were not entitled to rescission or any damages. The court reasoned that the general warranty provided in the deed was a covenant by the grantor only to defend the grantee's title, and since the defendant had defended the plaintiffs' titles in entering into the settlement with Car–Man, Inc. and obtaining quitclaim deeds for plaintiffs, the defendant had satisfied all obligations to the plaintiffs. Finally, the judge ruled that any damages that the plaintiffs "... may have

3. In that regard, the court pointed out that the parties had agreed in their joint partial statement of the case that the defendant had no knowledge of any interest or claim to the property by either the Carbones or Car–Man, Inc. until after she had already conveyed the property on the west side of Route 119 to the defendants.

suffered as a result of this litigation ... " might be recoverable by the plaintiffs in their pending action against the title insurer. The court found that the defendant fulfilled her obligation to eliminate any defect in title by resolving the disputed claim of Car–Man, Inc., and therefore, could not be held accountable for damages.

On appeal, the plaintiffs challenge the trial court's denial of their request for rescission and damages. They argue that the trial court erred in ruling on their breach of contract claims, and also assert that the trial court improperly denied them relief under the second count of the complaint, in which they alleged that the defendant "fraudulently" and "intentionally" executed and delivered deeds to them which did not convey title as required in the prior agreement of sale they had with her.

 The trial court initially analyzed the plaintiffs' second count and we shall do likewise. The court determined that because it was established that the defendant had no knowledge of the right of first refusal, she could not have knowingly made any false representations or any deliberate non-disclosures of material facts, which would amount to culpable misrepresentations. On that basis, the trial court ruled that the plaintiffs had failed to establish any grounds for recovery based upon fraudulent or intentional conduct by the defendant. We are constrained to disagree.

 Customarily, fraud is characterized by: (1) a knowingly false misrepresentation; (2) a concealment, calculated to deceive; or by (3) a nonprivileged failure to disclose. See *DeJoseph v. Zambelli*, 392 Pa. 24, 139 A.2d 644 (1958). However, fraud may be established where there is a misrepresentation, innocently made, but relating to a matter material to the transaction involved. See *La Course v. Kiesel*, 366 Pa. 385, 77 A.2d 877 (1951). In that case, the plaintiffs sought the cancellation of an agreement for the sale of property and for the return of their deposit, where they found that zoning restrictions for a property made it impossible for them to use it for apartments,

contrary to advertising which stated that it could be used for that purpose. In response to claims that the defendants were not aware that the use of the property was restricted to a single residence, Justice Ladner explained that the defendants were not innocent of fraud, where they were responsible for a misrepresentation of an existing material fact, whether they actually knew the truth or not, especially where they had the means to obtain knowledge of the truth before making the representation. Justice Ladner explained that misrepresentations made under such circumstances are fraudulent and have been variously called implied, constructive or legal fraud, or fraud in equity. Thus, when material misrepresentations are made, whether knowingly or not, they provide grounds for rescission. For similar reasoning by our own court, in an analogous situation, see *Silverman v. Bell Savings & Loan Association,* 367 Pa.Super. 464, 533 A.2d 110 (1987). It is evident, from these rulings, that the trial court in the instant case erred in failing to consider that Mrs. Odell may have engaged in fraudulent conduct, despite her lack of knowledge of the 1959 first option to purchase which had been agreed to by her mother in the sales agreement with Mr. and Mrs. Carbone.

The question is also presented as to whether Mrs. Odell's representations regarding the status of the title were material in the transaction. On this point, the decision in *La Course v. Kiesel, supra.,* is further instructive. Justice Ladner pointed out that if purchasers take a deed subject to a restriction which might expose them to the hazard of a law suit, such renders the title not marketable. The same analysis would appear to be applicable here, and suggest a determination that the innocent misrepresentation of the defendant was material in that it related to the marketability of the title, as it clearly exposed the plaintiffs to a suit. Having made this observation however, we must remand this case to the trial court for further proceedings and consideration of the plaintiffs' requests for relief. The

trial court should make any appropriate fact-finding on these points, in the first instance, in this equity action.

■ It is appropriate however, that prior to remand we also examine the plaintiffs' claim that the trial court erred in ruling that they were not entitled to rescission or other relief against Mrs. Odell. The trial court held that the defendant had satisfied all of her obligations to the plaintiffs by supplying quitclaim deeds from Car–Man, Inc. and herself. Again, we find ourselves in disagreement with the trial court. Assuming the trial court finds fraud by the defendant, or a breach of contract as alleged by the plaintiffs in the first count of their complaint, it clearly appears that the plaintiffs would have a right to obtain a rescission of the transaction, as well as a recovery of monies from the defendant.

■ As discussed, if it is determined that a purchaser in a real estate transaction has suffered from fraud by the seller, even in the nature of an innocent misrepresentation of a material fact, a right of rescission is established. See *Roberts v. Estate of Barbagallo*, 366 Pa.Super. 559, 531 A.2d 1125 (1987); *La Course v. Kiesel, supra.* Moreover, the purchaser is given the election of remedies; he may seek to rescind the deed, or in the alternative, may sue for damages. *Roberts v. Estate of Barbagallo, supra.* A plaintiff in these circumstances seeking rescission may not also seek damages, as such remedies would be inconsistent. See *Wedgewood Diner, Inc. v. Good*, 368 Pa.Super. 480, 534 A.2d 537 (1987); *Silverman v. Bell Savings & Loan Association, supra.* However, in addition to granting equitable relief, in the nature of rescission, the trial court is also empowered to grant the plaintiffs restitution of appropriate losses incurred. *Silverman v. Bell Savings & Loan Association, supra; Jeffrey Structures, Inc. v. Grimaldi*, 186 Pa.Super. 437, 142 A.2d 378 (1958). Restitution, unlike damages, is a remedy not inconsistent with rescission. *Wedgewood Diner, Inc. v. Good, supra; Silverman v. Bell Savings & Loan Association, supra.*

In the instant case, the plaintiffs sought rescission and "incidental damages". In light of our remand of this case to the trial court for further proceedings it would not be appropriate for our court to examine the details of the plaintiffs' claims for monies, to determine whether they encompass restitution claims or damage claims. Suffice it to point out that if the plaintiffs are found to be entitled to an order of rescission, they would also enjoy a right to restitution. Such issues are also to be addressed in the first instance by the trial court.

Reversed and remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.