622 A.2d 319

**Christopher R. ANDERSON & Melissa M. Anderson, Appellants,**

**v.**

**David M. HARPER, Wendy L. Harper & Associated Products Company, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1992.

Filed March 8, 1993.

John R. Moore, Selinsgrove, for appellants.

John R. Zonarich, Harrisburg, for Harper, appellees.

Lawrence J. Neary, Harrisburg, for Associated Products, appellee.

Before DEL SOLE, POPOVICH and HUDOCK, JJ.

DEL SOLE, Judge:

■ This is an appeal from a final order entered after a trial court sitting in equity issued an opinion and decree nisi denying Appellants' claims for rescission of a real estate transaction and damages.[1] Because we conclude that the trial court misapplied the law to the facts of this case, we reverse the trial court's order and remand this case for a determination of damages.

Appellants brought the underlying action after they encountered serious problems with the septic system of a home they had purchased from Appellees, The Harpers. Appellants also named Appellee, Associated Products Company, defendant based upon a septic system certification it issued in connection with the sale of the home.

The Harpers acquired the property in 1977 and at that time the septic system was already installed. During the ensuing years the Harpers noticed a wet area at the top of their septic

---

1. Because Appellants have resold the property to third parties during the pendancy of this appeal, their claims seeking rescission of the original sale are moot. Remaining for our review are issues of trial court error which were made based upon Appellants' claims for monetary damages.

field. A neighbor testified that on two occasions there were "blowouts" in which "black water" with an odor ran from the Harper's lot onto his land. The neighbor characterized this "water" as "seepage from the septic system." To correct the problem initially in 1977, Mr. Harper and his father-in-law, using a backhoe, expanded the area of the drain field by installing some tile and stone. Mr. Harper testified that these actions "had a positive effect" on the problem and reduced the wet spot so that its appearance was infrequent and small. He further testified that weather conditions impacted on the condition of the soggy spot and in dry conditions the problem appeared to abate. Later, in a further effort to control drainage and the flow of water near the septic system, Mr. Harper ran a pipe from the roof of the house to the street. He also put in French drains underground to divert the washing machine and water softener rinse water away from the septic system. In the spring of 1986 when listing the property for sale, Mr. Harper testified that he told the realtor that there was a soggy spot in the yard near the drain field. It was around this time when Mr. Harper did additional work to the drain field in an effort to further reduce the problem. Mr. Harper testified that he and his wife were "thrilled" with the result and believed that they had taken care of the problem. Mr. Harper admitted that he had not obtained permits for any of the work he performed.

Appellants were shown the property in May of 1986 and testified that they advised the realtor that they were interested but concerned about the fact that the property had a septic system and a private well. The realtor assured them that this would not be a problem because they would include as a condition of the sales agreement a certification that the septic system was in working order. The next day the agreement was signed by the parties. It included a special clause which stated "Septic System cleaned and certification that system is in properly [sic] working order."

To facilitate compliance with this clause in the agreement the Harpers hired and paid Associated Products Company (Associated) to pump the septic tank and to inspect and certify

it. An Associated employee went to the realty, pumped and inspected the tank. Part of the inspection included a determination that the absorption area was working properly. This was done by first opening the tank and checking the level inside, which in this case was appropriate and did not evidence any problems. Secondly the tank was emptied to determine if there was any "back flush." None was found. Finally, the area was examined for wet spots. No wet spot was present on the date of the examination and a conclusion was reached that the absorption area was working. Accordingly, Associated drafted a letter noting that they had cleaned the septic tank and inspected the structure. It further stated:

". . . in addition there was no back flush from the drain fields. The toilets were flushed and all the units flowed without obstruction to the tank. Our conclusion is the septic system appears to be in working order."

At trial Associated introduced official weather records which showed a below average rainfall for the months of May, June, September and October of 1986.

A week prior to closing, Appellants visited the home and inquired of Mrs. Harper if she and her husband "ever had any problems with your septic system." Appellants testified that Mrs. Harper made a negative response. Mrs. Harper testified that she responded:

[N]o, we have never had any problem with the septic itself.

I said, we have never had any backup in the house. The toilets flush. We have never had any problems with running as much water as we want. I said, but sometimes when it rains heavily it gets mushy outside.

Mrs. Harper further testified that she expected that Mr. Anderson would want to see the area or ask more questions, but that he just went on to another question.

Settlement was made on September 30, 1986 and on the last weekend of October while mowing the law, Mr. Anderson noticed a wet spot on the surface of the ground at the low end of the septic system. Appellants sought advice from Associated, who surmising the problem was caused by trees and

recommended three contractors. Appellants spoke with a contractor who indicated that work could not be performed in the seepage bed area without a permit. The sewage code enforcement officer informed Appellants that in order to obtain a permit it would first be necessary to do a soil analysis.

A soil scientist along with the enforcement officer visited the property and observed a discharge in the absorption area which had a strong sewage odor. A soil probe was done which revealed that the soil depth in the absorption area was not sufficient for a subsurface sewage system to function properly. The scientist testified that he advised Appellants that based on state regulations there was no means of repairing the original installation because it was not compatible with the soil conditions. He further stated that he was satisfied that his testing was accurate because it was consistent with his examination of other lots in the same subdivision. This expert opined that a wet spot on a drain filed which has a sewage odor would be an indication to a soil scientist as well as a lay person that the septic system is not operating properly. He said that such a condition could exist without a resulting sewage back flow into the tank or into the house.

This specialist testified that state statutes and DER regulation do not allow for repairs to a septic system including an addition to an absorption area, without first obtaining a permit. Regulations also require that all wastewater be discharged into the primary treatment facility and that alternate discharge of wastewater from a source such as a washing machine into a french drain are not permitted.

The township code administrator testified that he became aware of the problem and directed Appellants to formulate a plan to resolve it or he would seek an order or injunction forcing something to be done at the site. Ultimately Appellants had designed a entirely new sewage disposal system which required the construction of a new water well, revision to the water system, the abandonment and sealing of the old well and the construction of a elevated sand mound with a tank and pump. There was testimony before the court that the new elevated sand system created an unattractive "moun-

tain" in the rear of the property and that this condition decreased the desirability of their property in the real estate market.

■ Appellant brought this action against the Harpers and Associated on grounds of fraudulent or material misrepresentation of the condition of the septic system and based upon claimed violation of the Unfair Trade Practices and Consumer Protection Law. A one day trial was held before a judge sitting without a jury. The trial judge entered an opinion and decree nisi in favor of Harpers and Associated. With respect to the defendant, Associated, the court found "not a shred of evidence which would make them liable" and ruled that the company was warranted in issuing its certificate.[2] The court also found Harpers not to be responsible under any theory offered by Appellants. The court ruled that it found Mrs. Harper's testimony that she had mentioned the wet spot, to be credible, therefore there was no intentional or fraudulent misrepresentations made. It further found no evidence of active concealment in this case, based upon its conclusion that the Harpers did not actively conceal facts nor prevent Appellant from investigating. The court concluded that recovery could not be had based upon the theory that a seller is responsible for serious and dangerous latent defects known to exist since here the Harpers had no reason to believe that their most recent repair had not solved the problem. Appellant's exceptions were denied and a final order was entered. This appeal follows.

■ Appellants challenge each of the trial court's conclusion, but it is with respect to this later analysis with which we find error, and conclude that where one makes repairs to a serious and dangerous latent condition on the land, absent

2. We too find no evidence upon which to hold Associated liable. Appellants presented no testimony or documentary evidence which would establish that Associated's tests were conducted in an unacceptable manner. While Appellants were, understandably, upset by Associated's inability to detect a problem, absent evidence that Associated deviated from reasonable standards when conducting its inspection, and absent evidence that Associated was aware of a wet spot in the absorption area, we find no error with the trial court's ruling.

proper permits and approval, such person cannot be found to have justifiably believed that the problem has been corrected. In such situation the buyers have a right to be told of the history of repairs and past problems from which they can investigate the condition of the property. Absent such disclosure the seller will remain liable for subsequent problems caused by the undisclosed defect.

Where evidence to support a finding that a seller had fraudulent intentions or intentionally concealed material information is lacking, liability may, nevertheless, arise. Such liability is premised on § 353 of the Restatement, Second, of Torts which provides that liability attaches to a seller of land who fails to disclose to an unsuspecting buyer or conceals from the buyer any known condition which involves an unreasonable risk to people on the land. *Roberts v. Estate of Barbagallo*, 366 Pa.Super. 559, 531 A.2d 1125 (1987). In *Quashnock v. Frost*, 299 Pa.Super. 9, 445 A.2d 121 (1982), the court referred to this theory based on nondisclosure as the "modern" view. *Id.* at 17, 445 A.2d at 125. The traditional view of *caveat emptor* holds that absent active concealment or material misrepresentation there is no duty to disclose defects. *Id.* "The modern view however, holds that where there is a serious and dangerous latent defect known to exist by the seller, then he must disclose such defect to the unknowing buyer or suffer liability for his failure to do so." *Id.* The *Quashnock* court concluded that a termite infestation of a residential house which caused the weakening of a floor, was a manifestly serious and dangerous condition. Since its existence was not readily observable upon reasonable inspection, justice equity and fair dealing required the seller to speak out regardless of the buyer's failure to inquire.

To begin our analysis under this theory it is first necessary to conclude that there was a serious and dangerous defect. As stated, the *Quashnock* court found termite damage which weakened the floor to be a serious and dangerous condition. Such a condition was said not to exist, where a swimming pool in a newly purchased home required repairs which far exceeded the estimates provided by the sellers.

*Gozon v. Henderson–Dewey & Assoc.,* 312 Pa.Super. 242, 458 A.2d 605, 607 (1983). In this case, we are faced with a malfunctioning sewage disposal system which seeped black odorous sewage from the absorption area. The local inspector threatened injunctive action if Appellants did not remedy the problem. Ultimately, Appellants were required to install an entirely new system. In *Shane v. Hoffmann,* 227 Pa.Super. 176, 324 A.2d 532 (1974), the court found that a defective sewer, "which could inundate the residence with hazardous and odious waste material, was a factor which was material to the prospective purchase of land." *Id.* at 182–83, 324 A.2d at 536. We likewise conclude that a malfunctioning sewage system which causes sewage to surface to the top of the residential lot is a serious and dangerous condition. Such untreated sewage can pollute the environment including water supplies and may create potential health and safety problems.

■ Because of the nature of a septic system, the defect can be readily characterized as latent. As stated in *Woodward v. Dietrich,* 378 Pa.Super. 111, 548 A.2d 301, 310–311 (1988):

Sewer connections are subterranean fixtures which materially affect the value of a home. They are expected to have an extended useful lifetime. Though they are important to any prospective home buyer, sewer connections are not by their nature open to inspection. Instead, prospective home buyers must ordinarily rely upon representations made by the sellers and any confirmatory documentation available.

■ More troubling, however, is the question of whether Mr. & Mrs. Harper can be held to have known of the existing problem. Our determination of this matter must remain in keeping with the trial court's factual finding that the Harpers had "no reason to believe that the most recent repair had not solved the problem and where their only remaining concern was a wet spot in rainy weather."

Accepting, as we must, this factual determination, we nevertheless conclude that the Harpers must be charged with knowing that a defect existed. The facts demonstrate that

since they first occupied their home, the Harpers had problems with the absorption area of the septic system.

On two occasions the seepage flowed onto a neighbor's land. In an effort to resolve these problems, which appeared to escalate in rainy weather, Mr. Harper enlarged the drain filed of the absorption bed and later installed a french drain so that the laundry drainage would not enter the treatment tank. When listing the home for sale Mr. Harper again did additional work to the drainage field. This last effort appeared to resolve the problem in the remaining few months before Appellants occupied the property, but weather reports indicated that unseasonably dry weather conditions existed at the time. Mr. Harper testified for the court that he had not obtained a permit for any of the work he performed.

It is not disputed that the law required Mr. Harper to obtain a permit before altering his individual sewage system, *See* 35 P.S. § 750.7(a), however, none was obtained and the work Mr. Harper did on the property was never inspected. In addition to their failure to obtain the necessary permits, the Harpers also violated § 73.11 of the Pa.Code. It provides that liquid wastes including laundry and water softener backwash must be discharged into a treatment tank, and that no untreated or partially treated sewage may be discharged to the surface of the ground. *Id.*

We conclude in view of the Harper's failure to obtain the proper permits and their noncompliance with drainage requirements, that knowledge of a continuing problem must be imputed to them. The trial court noted that the Harpers remained concerned about a "wet spot in rainy weather." They used a variety of means to correct the problem, which fluctuated in degree, but in so doing they neglected to get proper permits and did not follow existing regulations. The Harpers latest effort was undertaken at the same time they listed the home for sale, and appeared to correct the situation throughout the dry months of that summer. When the system was tested after this addition to the drainage field, no evidence of the absorption problem could be seen. However because the Harpers undertook to make repairs without proper ap-

proval and diverted drainage water outside the treatment tank, which could not be discover on inspection of the system, we conclude that they must be held to have "known" of a malfunction. Only the acquisition of proper repairs done with the required permits would allow for the conclusion that the Harpers had no knowledge of a latent defect.

■ Finally we also conclude that the Harpers did not disclose this known defect to Appellants. The trial court found Mrs. Harper's recollection of her discussion with Appellants to be credible. Therein she testified that when Appellants asked if the Harpers had any problem with the septic system she advised them that they had not, but "sometimes when it rains heavily it gets mushy outside." We cannot conclude that Mrs. Harper's reference to mushy ground in rainy weather, was a disclosure of the condition of the septic system. Although her statement was accurate it cannot be said to put Appellants on notice of the problem.

■ The Harpers were aware that during their period of occupancy of their home, they were troubled by the recurring presence of wet spots in the absorption area of their septic system. On two occasions the area became so large that it drained onto neighboring land. Because of the smell and origination of the drainage, it was found that it was caused by the malfunction of the existing septic system. The Harpers attempts to alleviate this condition through their own efforts, was done without the necessary permits and did not follow existing laws and regulations. Had they performed this work with the proper approvals, notice of the failure of the system to work under the soil conditions present would likely have been discovered. Although the Harpers could not be charged with failing to disclose the exact problems of the system, we hold that their attempts to correct the problems without obtaining the required permits and inspections placed on them a duty to disclose the existence of the problems, the nature of their repairs, and the fact that they were done without permits or inspections. Appellants should have been advised that there was, in the past, an absorption problem and that the Harpers had attempted to correct this themselves. Armed

with this knowledge Appellants would then have been responsible to detect the nature of the problem and the need for any further repairs. Because under these circumstances Appellee were not advised of this known serious latent defect, Appellants are entitled to recover damages from the Harpers. The amount of these damages will be a matter for the trial court to determine on remand.

We reverse the trial court order entering judgment in favor of the Appellees David and Wendy Harper. Judgment in favor of Appellee, Associated Products Company, is affirmed. This matter is remanded to the trial court for a determination of damages.