Albert M. BORTZ

v.

Patrick J. NOON and Virginia R. Noon, Coldwell Banker Real Estate, a Professional Corporation and Suburban Settlement Services, Inc., a Pennsylvania Corporation,

v.

J.J. NOLTE, an Individual.

Appeal of COLDWELL BANKER REAL ESTATE, INC.

Superior Court of Pennsylvania.

Argued April 8, 1997.

Filed July 14, 1997.

Reargument Denied Sept. 25, 1997.

---

John Lucas, Pittsburgh, for appellant.

Andrea O. Geraghty, Pittsburgh, for Albert M. Bortz, appellee.

Before CIRILLO, President Judge Emeritus, JOHNSON, J., and CERCONE, President Judge Emeritus.

CIRILLO, President Judge Emeritus.

Coldwell Banker Real Estate, Inc. ("Coldwell Banker") appeals from a final decree entered in the Court of Common Pleas of Allegheny County in favor of Appellee Albert Bortz. We affirm in part and reverse in part.

On July 22, 1988, Albert Bortz filed a complaint in equity [1] against Defendants Patrick J. Noon, Virginia Noon, Coldwell Banker, and Suburban Settlement Services, Inc. ("Suburban Settlement"),[2] alleging false representation in connection with his purchase of a residential property located in Pittsburgh.[3] Albert Bortz and his former wife,

---

1. Bortz's complaint sought rescission of the purchase agreement by Bortz of the property from the Noons. Although the requested rescission was not granted, the trial court retained jurisdiction over the remaining claims asserted in the complaint.

2. J.J. Nolte was later joined as an additional defendant.

3. Bortz's complaint claimed that Coldwell Banker, acting as the sellers' agent, intentionally misrepresented the condition of a septic sewer system located on the purchased property. In addition, Bortz's complaint alleged misrepresentations concerning water drainage in the basement. This decision, however, will not address the claim arising out of water infiltration because this issue did not result in a final decree against any of the Defendants. Bortz, therefore, abandoned the claim.

Cindy Bortz, entered into an Agreement of Sale with the Noons to purchase their home located at 479 Woodland Road in Pittsburgh, Pennsylvania. Coldwell Banker, through its agent, Renee Valent, acted as the selling agent for the property. In order to receive a commitment from the mortgage lender, Coldwell Banker Residential Mortgage Services, Inc. ("Lender"),[4] the property's on-site septic system[5] had to pass a dye test[6] prior to closing. A dye test was performed by Russ Plumbing and Heating in mid-August, prior to the parties' September settlement. The dye test failed and Valent informed the Bortzes that the septic system had been tested, was not working properly, and that settlement would be delayed until a clean septic dye test was received.

The Noons hired J.J. Nolte, a contractor, to make the necessary repairs to the septic system. Ten days prior to closing, the Lender notified the title company conducting the closing, Suburban Settlement, that the property had passed the dye test. At closing, the settlement officer, Christopher Abernathy, advised Bortz that he had received a dye test from Nolte indicating that the septic system had passed the test. Subsequent to settlement, A.J. Kramer performed another dye test on the septic system, at Suburban Settlement's request, and the septic system failed. The test concluded that the on-site sewage disposal system could not be repaired and the only alternative was to connect into the public sewer system which would cost over $15,000.00.

After an equity trial, the parties submitted proposed findings of fact and conclusions of law. The court, thereafter, entered a decree in favor of Bortz in the amount of $15,300.00,

plus pre-judgment interest at the legal rate. Coldwell Banker filed post-trial motions which the court denied. After filing a petition to amend its notice of appeal, the court entered a final decree[7] from which Coldwell Banker appealed, raising the following issues for our review:

(1) Whether the trial court erred in concluding that Coldwell Banker made fraudulent misrepresentations concerning the results of the dye test;

(2) Whether the trial court erred in concluding that Coldwell Banker committed fraud by concealing the results of an earlier dye test;[8] and

(3) Whether the trial court erred in dismissing Coldwell Bankers' cross-claim for indemnity and/or contribution against Defendants Nolte and Suburban Settlement.

Our scope of review of an adjudication in equity is well established: the findings of fact supported by the evidence of record are to be accorded the same weight as a jury verdict, and the findings must be sustained unless the court abused its discretion or committed an error of law. *Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 464 A.2d 1243 (1983) (citing *Eddystone Fire Co. No. 1 v. Continental Insurance Cos.,* 284 Pa.Super. 260, 425 A.2d 803 (1981)). In reviewing the trial judge's findings, the test is not whether the appellate court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence, a judge could reasonably have reached the conclusion of the trial judge. *School District of City of Harrisburg v. Pennsylvania Interscholastic Athletic Assn.,* 453 Pa. 495,

---

4. Coldwell Banker Residential Mortgage Services, Inc. is a separate entity from Coldwell Banker Real Estate, Inc.

5. The property was serviced by an on-site sewage disposal system, commonly referred to as a septic system, but in this case more accurately described as a septic tank and related drainage fields.

6. A dye test is performed to determine whether the septic system is functioning properly. The test is done by placing dye in the water and running it through the system. The purpose is to identify any leaks which may exist in the sanitary sewer system. If the system is working properly,

there should not be any evidence of the dye showing or "surfacing." In the event that the dye "leeches out" or does show, than it means the dye is leaking out of the system, which in turn, reveals that the system is failing in some location and is not functioning properly.

7. On October 4, 1996, Coldwell Banker filed a notice of appeal from the order denying post-trial motions. On October 15, 1996, Coldwell Banker filed a praecipe to enter a final decree in the amount of $15,300.00. This is the decree from which the present appeal has been taken.

8. For judicial convenience, we have consolidated the Appellant's first two issues on appeal.

309 A.2d 353 (1973). The evidence must be viewed in the light most favorable to the prevailing party below. *Krobot v. Ganzak*, 194 Pa.Super. 49, 166 A.2d 311 (1960). Additionally, when we examine the evidence of record and the trial judge's conclusions based on the evidence, we must accept the trial judge's findings with respect to the credibility of the witnesses and the weight to be accorded their testimony. *Delahanty*, 318 Pa.Super. at 114, 464 A.2d at 1255 (citations omitted).

 With these standards in mind, we now look to the elements of fraud to determine whether the trial court erred in concluding that Coldwell Banker made fraudulent misrepresentations concerning the results of a dye test.[9] It is well settled that one who fraudulently makes a misrepresentation of fact or law for the purpose of inducing another to act or refrain from acting in reliance in a transaction is liable to the other for the harm caused by the justifiable reliance upon the misrepresentation. *Smith v. Renaut*, 387 Pa.Super. 299, 564 A.2d 188 (1989) (citing *Shane v. Hoffmann*, 227 Pa.Super. 176, 324 A.2d 532 (1974), *overruled in part on other grounds by*, 508 Pa. 553, 560, 499 A.2d 282, 286 (1985)).[10] To state a cause of action for fraud, the plaintiff is required to establish: (1) misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate cause. *Woodward v. Dietrich*, 378 Pa.Super. 111, 548 A.2d 301 (1988) (quoting *Delahanty, supra*).

 Before considering Appellant's first contention, we note that fraud can take many forms. *See Delahanty*, 318 Pa.Super. at 107, 464 A.2d at 1251. To be actionable, the misrepresentation need not be in the form of a positive assertion. As the supreme court stated in *In re McClellan's Estate*, 365 Pa. 401, 75 A.2d 595 (1950),

> fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. It is any artifice by which a person is deceived to his disadvantage.

*Id.* at 406–08, 75 A.2d at 598. It may be by false or misleading allegations or by concealment of that which would have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. *Delahanty*, 318 Pa.Super. at 108, 464 A.2d at 1252. Yet, a misrepresentation innocently made is also actionable if it relates to a matter material to the transaction involved. *Id.* A misrepresentation is material when it is of such a character that if it had not been made, the transaction would not have occurred. *Greenwood*, 239 Pa.Super. at 378, 357 A.2d at 607.

 Applying these elements and principles to the Appellant's first two issues, we agree with the trial court. The real estate agent's conduct amounted to fraudulent misrepresentation wherein she deprived Bortz of specific knowledge of the manner in which a septic dye test demonstrates a malfunctioning of an on-site sewage disposal system and permitted settlement to proceed despite this lack of vital information.[11] *See Delahanty, supra; See also Boyle v. Odell*, 413 Pa.Super. 562, 605 A.2d 1260 (1992) (holding vendor could be liable for fraud even

---

**9.** We note that determinations of fraud will not be disturbed on review if clearly supported by the evidence. *Greenwood v. Kadoich*, 239 Pa.Super. 372, 357 A.2d 604 (1976).

**10.** In *Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 560, 499 A.2d 282, 286 (1985), the Pennsylvania Supreme Court overruled *Shane v. Hoffmann, supra*, to the extent that it held that scienter was required on the part of the principal where his or her agent made the representation.

**11.** We agree, however, with Appellant that the initial dye test conducted by Ross on August 14,

1986 did not amount to a fraudulent misrepresentation. The record amply supports that the agent disclosed the dye test failure and the Appellee admits that the agent apprised him of such and advised him that it had to be remedied prior to closing. At this point the agent cannot be said to have made a misrepresentation because she believed the problem would be solved. Additionally, Appellee's knowledge that the August 14th dye test failed negates any justifiable reliance. *See Delahanty, supra.*

if material misrepresentation were innocent). Valent assured Bortz the septic system would be repaired, at the seller's cost, prior to closing. Yet, Valent took no actions to assure that the Nolte report, was, in fact, a clear dye test.[12] Valent conceded that she never received a copy of the Nolte report prior to settlement and that she failed to make an independent inquiry to determine whether the septic system passed inspection. This could easily have been accomplished by contacting the health department to see if a certificate had been issued, or, at the very least, contacting the contractor to request a copy of the report. Instead, Valent relied on a person she did not know who called from the title company to advise her that the septic system passed the dye test.

Moreover, Valent admitted that, at the time of closing, she did not even know whether the septic system was functioning properly. Although we recognize that a real estate agent is not a specialist of on-site sewage disposal systems, she could have easily inquired into the validity of the report. On the contrary, Valent never even looked at the Nolte report at settlement. Had she done so, Valent would have been on notice that even though the report indicated that the "dye did not show," the report also acknowledged that "one of the trenches [was] surfacing on the ground."[13] Instead, Valent accepted the title agent's interpretation that the dye test was clear. Furthermore, Valent should have seen to it that Bortz had copies of all reports available for his review. If Bortz had received a copy of the report, he may have questioned the consequences of the reference to "surfacing on the ground."

■ Because settlement was conditioned on a proper functioning septic system, as evidenced by a clear septic test, when Valent allowed the closing to take place, she misrepresented that the dye test was clear and that the septic system was in proper order. We remind Appellant that fraud consists of many different variations and does not necessarily have to take form by means of an affirmative act. *Delahanty, supra.* Fraud constitutes anything calculated to deceive, whether it be direct, a falsehood, or by innuendo, by speech *or silence,* word of mouth, or look of gesture. *McClellan's Estate,* 365 Pa. at 403, 75 A.2d at 595. Moreover, even if a misrepresentation is innocent, it is still actionable where the party is duly bound to ascertain the truth before making the misrepresentation. *Glanski v. Ervine,* 269 Pa.Super. 182, 409 A.2d 425 (1979); *Shane v. Hoffmann,* 227 Pa.Super. 176, 324 A.2d 532 (1974); *Greenwood, supra.*

We believe that the record amply supports that Valent's conduct of failing to inquire into the accuracy of the report and in failing to provide the reports to Bortz so that he could pursue his own investigation, constituted a fraudulent misrepresentation. *See Glanski, supra; Krobot, supra.* Valent was bound to ascertain the truth before proceeding through with settlement. *See Glanski, supra; Shane, supra.* Believing that closing was coincidental with a clear dye test and a properly repaired on-site sewage system, Bortz justifiably relied upon the settlement as putting closure to these items. we find, therefore, that the trial court did not err in holding that Appellant's conduct constituted a fraudulent misrepresentation. *See Greenwood, supra; Delahanty, supra.*

■ With regard to Appellant's next issue, the trial court held that: (1) Nolte owed

---

12. A "clear dye test" is one that exhibits no signs of dye or wetting on the surface of the ground indicating that the septic system is in proper working order.

13. These statements are completely inconsistent with one another. If the dye did not show, there would not be surfacing on the ground. Suburban Settlement cited in a brief to the following testimony taken from one of Jack Nolte's employees, however, we note that we may not reasonably rely upon it because Appellant has not transcribed the deposition as part of the record. The employee testified that the Nolte report read:

A. We returned two days after the dye was put into the commodes. The dye did not show. One of the trenches is surfacing on the ground.
Q. When you went over this before with Mr. Lucas, you indicated that since a trench was surfacing on the ground, that would lead you to believe that dye had surfaced.
A. Right.
Q. Now if the report says the dye did not show, how would you now that dye surfaced?
A. See, this doesn't make nay sense to me. It's a typing error.
Q. Where would this have come from? The Nolte office?
A. Yes, I don't understand this letter.

no duty to the Bortzes because he represented the sellers not the buyers, and (2) Suburban Settlement Services owed no duty because it lacked privity with Bortz. We conclude that the trial court erred in finding that Nolte and Suburban Settlement did not owe a duty to Bortz. The trial court's reasoning is deficient for several reasons.

■ First, a party may still be liable for a person's reasonable reliance upon fraudulent misrepresentation, despite the fact that the person is not in privity with the party making the misrepresentations and was not specifically intended to rely on the misrepresentations. *Woodward. v. Dietrich,* 378 Pa.Super. 111, 548 A.2d 301 (1988). In *Woodward,* we held that a contractor was liable in tort for injuries to third parties who specifically intended to rely upon the contractor's fraudulent assurances, notwithstanding an absence of privity. *Id.* This court traced the erosion of the privity defense in actions for fraud and deceit with particular emphasis on cases involving construction contracts. *Woodward,* 378 Pa.Super. at 125–42, 548 A.2d at 308–16. We concluded that a contractor may be sued for fraud in the absence of strict privity when the third party was "specifically intended" to rely upon the fraudulent conduct or when the reasonable reliance of a third party on the fraudulent conduct was "specially foreseeable." [14] *Id.* at 133–42, 548 A.2d at 312–16; *see also Valley Forge Towers South Condominium v. Ron–Ike Foam Insulators,* 393 Pa.Super. 339, 574 A.2d 641, 647 (1990) (recognizing that strict technical privity requirement does not generally apply to fraud cases). We, therefore, believe that a party cannot hide behind the privity defense to shield itself from fraudulent misrepresentation liability.

Presently, the trial court ended its inquiry after deciding that no privity or duty existed because the contractor was hired by the sellers, not the buyers, and, therefore, held that

Nolte assumed no responsibility. [15] Having determined that the absence of privity is not dispositive, however, we now look to Nolte's conduct to see if he owed a duty to the buyers.

■ Nolte performed the second dye test on the property and issued a "report" that he personally delivered to the title agent on the day of settlement. As our court stated in *Woodward, supra,* a contractor may be sued for fraud in the absence of strict privity when the third party was "specifically intended" to rely upon the fraudulent conduct or when the reasonable reliance of a third party on the fraudulent conduct was "specifically foreseeable." *Woodward,* 378 Pa.Super. at 133–42, 548 A.2d at 312–16. We do not find it at all unusual for a buyer to rely on the accuracy of a dye test, especially when the contractor is aware that settlement is pending on receipt of this item. Although Nolte indicated that no dye had shown, he also made a reference to "surfacing" of trenches. *Cf. Anderson v. Harper,* 424 Pa.Super. 161, 622 A.2d 319, 323 n. 2 (1993) (contractor not liable for fraudulent misrepresentation concerning a sewage disposal system when he was unaware of a wet spot in the absorption area). Instantly the surfacing is inconsistent with a clear dye test. Nolte, therefore, was on notice of the potential problem and, consequently, had a duty to emphasize this in his report. [16]

Furthermore, the sellers paid Nolte over two thousand dollars to make the necessary repairs prior to closing. Moreover, settlement was delayed twenty minutes while the parties waited for Nolte to deliver his report. Nolte, therefore, knew that closing could not proceed in the absence of a clear dye test illustrating that the septic system was functioning properly. It is incredible that just two weeks later, a subsequent examination of the property revealed that the system was

---

**14.** Even under the early common law, a contractor was liable in tort for injuries to third parties who were specifically intended to rely upon the fraudulent assurances, notwithstanding an absence of privity. *Woodward,* 378 Pa.Super. at 131–35, 548 A.2d at 311–12.

**15.** We recognize that the Chancellor acknowledged that Nolte's work was done in compliance

with the county health department's specifications, however, the record contains no certificate or any other evidence that would support such a finding.

**16.** Even the trial court recognized that "there is credible evidence to support that the rather ambiguous Nolte report delivered at closing was flawed...."

completely dysfunctional and the only remedy was to connect the system to a public sewer system. We, therefore, find that the trial court clearly abused its discretion in dismissing Nolte from the fraudulent misrepresentation claim.

■ We likewise find that the trial court erred in concluding that Suburban Settlement Services could not be liable because it owed no duty to the buyers. Although Mr. Abernathy testified that he was hired and acted solely on behalf of the lender, he also provided the buyers with a service, namely the issuance of title insurance, for a fee. This fact is clearly evidenced from the charges that were deducted from the borrowers' funds at settlement and disbursed to Suburban Settlement for title insurance and other closing costs. Obviously, Suburban Settlement was not acting merely for the mortgage company, but, instead, was providing dual services to the buyers and the lender.[17]

"The purpose of title insurance is to protect the insured, the buyer, from loss arising from defects in the title which he acquires."[18] *Hicks. v. Saboe*, 521 Pa. 380, 384, 555 A.2d 1241, 1243 (1989); *Hooper v. Commonwealth Land Title Ins. Co.*, 285 Pa.Super. 265, 427 A.2d 215 (1981). In *Hicks*, the Pennsylvania Supreme Court refused to extend a title company's duty to a person who was not a party to the contract and precluded direct liability to an uninsured third party. *Hicks*, 521 Pa. at 384–86, 555 A.2d at 1244. By contrast, in the present case the Bortzes did purchase title insurance from Suburban Settlement Services. Clearly, title insurance exists as a protection for the buyer. *See Hicks, supra* (recognizing that purchasers contract for title insurance to protect themselves, not to benefit anyone else). Although Suburban Settlement testified that it represented the mortgage company, there can be no doubt that it is reasonably foreseeable for a buyer purchasing title insurance, for valuable consideration, to expect that the title company is providing him or her services. *See, e.g. Romagano v. Redmond*, 8 D. & C.4th 356 (1990) (holding that abstract company owed a duty and this duty included inquiring into the status of wetlands on the property).[19] Therefore, Suburban Settlement owed some duty to the buyers and the trial court erred in determining otherwise.

■ Having determined that Suburban Settlement owed some duty to Bortz, we next consider whether Suburban Settlement may be held responsible for fraudulent misrepresentation. The Nolte report delivered at closing was not a "clear septic test," however, Abernathy announced to everyone present at the closing that the test had been received, that the dye test was clear, and that settlement could proceed. Although the trial court never reached this issue because it found no liability based on lack of privity, we believe that the trial court was also troubled by the ambiguous Nolte report. In fact, the trial court recognized that "[t]he Chancellor did not consider credible Abernathy's testimony that at the settlement [sic] he regarded the Nolte report as a 'clear septic test.'" If Abernathy represented that the dye test was clear when he knew or thought otherwise, then he could be liable for fraudulent misrepresentation. *See Delahanty, supra; Woodward, supra.* Moreover, even if Abernathy's conduct were innocent, it could still be actionable. *See Glanski, supra; Shane, supra.*

---

17. In fact, in his trial testimony, Mr. Abernathy conceded that he owed an allegiance to more than just the lender.

> Q. Is that unusual for a mortgage or closing company to attempt to get involved to accommodate or help a buyer in the event there is a problem?
> A. It was not unusual for our closing company.
> Q. Why would a closing company be interested in doing that?
> A. Well, our first allegiance is to the lender that places the order to us, **but our second allegiance is, of course, to the borrower who in**

fact provides the fees that pay us. **We like to make sure that they are as satisfied as the[y] can be under the circumstances.**

18. Initially we note that because the contract for title insurance is not part of the record, we may not reliably interpret its meaning. We may, however, comment on the purpose of title insurance.

19. We recognize that this decision is not binding on our court, however, we find the reasoning persuasive due to the similarities in the facts and the lack of appellate decisions in this area of the law.

Part of the settlement officer's duty is to ensure that all the necessary paper work is in order so that closing can proceed.[20] *See Romagano, supra.* Bortz paid Suburban Settlement consideration for performing these services. Therefore, we believe that Bortz contracted with Suburban Settlement to perform all necessary duties of settlement on the property. *See Hooper, supra* (holding that assumption of duties of title company as conveyancer is independent of contract to insure title). Moreover, Suburban Settlement held itself out as an expert in the performance of settlements of real property transactions.[21] Suburban Settlement prepared the settlement sheet for the transaction, wrote and disbursed the checks out of its accounts for said settlement, prepared the deed of conveyance, and issued Bortz a title insurance policy on the property. Suburban Settlement performed all duties commonly performed by title companies and Bortz reasonably relied on them in order to perform all the necessary steps for his acquisition and use of the property. *See Romagano, supra.* If the title company were not satisfied with what was presented before them, then it should not have proceeded with the settlement.

■ In view of the myriad complications attendant to a modern real estate transaction, including the on-site sewage disposal system issue, those who hold themselves out to handle such transactions clearly owe a duty to their clients. *See Henkels v. Philadelphia Title Ins. Co.,* 177 Pa.Super. 110, 110 A.2d 878 (1955). This duty should include notice of the pitfalls which the title company is not capable of addressing, including sewer problems. *Romagano, supra.* We conclude, therefore, that the trial court clearly abused its discretion in dismissing Suburban Settlement from the fraudulent misrepresentation claim.

Affirmed in part and reversed in part.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

While I agree with the Majority's determination that J.J. Nolte and Suburban Settlement Services, Inc., are liable under a claim of fraudulent misrepresentation in this instance, I cannot agree that Coldwell Banker Real Estate, Inc., (Coldwell Banker), is liable under the facts of this case. I must therefore respectfully dissent.

The Pennsylvania Supreme Court has recently reiterated the elements needed to establish a cause of action for intentional misrepresentation or fraud: ·

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994). A misrepresentation that serves as a basis for a fraud claim need not be in the form of a positive assertion, but may, in certain cases, be established by silence. *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188 (1989). Nevertheless, mere silence cannot be sufficient to establish a cause of action in fraud in the absence of a duty to speak. *Smith, supra,* at 192, 564

---

20. Mr. Abernathy testified as to the functions and duties of his employees:

A. We would have a closing coordinator whose job it was to gather exhibits, get payoffs on mortgage loans, and any judgments to secure tax receipts and bills, and to rough out or help prepare a settlement sheet, and draw checks and close the file after the settlement had taken place. There was also Title Abstractors who came downtown and searched the records, . . . . Our only function was to conduct real estate settlements and provide title insurance.

21. Mr. Abernathy, himself, testified that he has been conducting settlements for eighteen years and that he has enough experience to know that a problem exists when the dye test reveals that the dye did show. Yet, Mr. Abernathy did not question the second sentence on the Nolte report which referenced the "surfacing of trenches." Although Abernathy did testify that it was not customary in the industry in September of 1986 for a settlement officer to question the contractor who performed a septic dye test, he further stated that this was true, "unless there was some reason for a question to be asked." The inconsistencies illustrated in the Nolte Report could trigger the need to ask such a question.

A.2d at 192; *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232 (1992).

Here, a clear dye test was a requirement of the lender, not a condition contained in Coldwell Banker's agreement of sale. The parties were all aware that the property failed the initial dye test. Coldwell Banker's agent, Renee Valent, told the Bortzes about the failure, but indicated that the sellers would fix the problem before the closing. Therefore, when the repairman chosen by the sellers, Nolte, performed the second test, Nolte forwarded the test results to the lender. Adjudication, September 26, 1995, at ¶ 29. The lender then approved the mortgage and advised its agent, Mr. Abernathy, to proceed with the closing. *Id.* Mr. Abernathy informed the parties at the closing that a clear dye test result had been obtained by Nolte after his repair work. *Id.* at ¶ 22. A hard copy of Nolte's report was delivered at the same time as the closing; closing was even delayed slightly while waiting for Nolte to arrive with the report. The report states that the dye did not show, then later states that one of the trenches was surfacing. Although these two results may be inconsistent, I submit that they are not inconsistent on their face; in other words, one would have to be familiar with the sewage repair business to understand that the two findings are inconsistent.

The Majority imposes liability because it concludes that Valent should have acted to ensure that Nolte's report of a clear dye test was accurate. Maj. op. at 1315–1316. The Majority suggests that Valent should have contacted the health department to see if a certificate had been issued or contacted the contractor to receive a copy of the report. *Id.* I have found no case where this Court has imposed such an affirmative duty on a real estate agent.

In this case, the face of Nolte's report indicates that the second dye test was clear. In addition, Abernathy stated at closing that the second test was clear. Valent did not tell the Bortzes that the second test was clear, they received this information from their lender. Here, it was the lender, Abernathy's principal, who conditioned the mortgage upon a successful dye test. Valent is not an expert in sewage system maintenance and repair; she is a real estate salesperson. The

lender stated that the second test was clear, and the face of the report that she was shown at the closing stated that the dye did not show; Valent should therefore not be held liable. Valent gave the Bortzes all the information that she knew about the dye tests. Under the circumstances, I would conclude that Valent did not make a false representation that the property had passed the second dye test.

The case cited by the Majority in support of its position that Valent had a duty to inquire into the accuracy of Nolte's report is *Glanski v. Ervine,* 269 Pa.Super. 182, 409 A.2d 425 (1979). In that case, a real estate agent affirmatively misrepresented the extent of termite damage to a house. Initially, the agent told the buyers not to discuss anything with the seller concerning the house because he was an "odd fellow." *Id.* at 186, 409 A.2d at 427. Then, when the buyers directly asked the agent about termites, he told them that there were no termites. *Id.* The house was sold in an "as is" condition, and, after moving in, the buyers discovered extensive termite damage that had been covered by furniture and paint. The buyers approached the seller, who was surprised that the agent had not informed them about the damage. *Id.* at 187, 409 A.2d at 428. The seller explained that he had discussed the termite problem with the agent, and the agent was supposed to have told the buyers. *Id.*

*Glanski* is distinguishable from the instant case because of the affirmative misrepresentation that the agent perpetrated upon the buyers in that case. When asked a direct question about termites, a problem that the agent had discussed with the seller, the agent lied and said there had been no termites. That situation is very different from what exists in the present case, where the agent made no false assurances that a defect did not exist. Valent was aware that the problem existed, told the Bortzes about it, and correctly stated that the problem was currently under repair. The face of the report of the second dye test indicates that the problem was repaired. Because I would not create a duty upon Valent to question the results of the second test, nor to question the

assurances that she had been given that the problem had been corrected, I would not find liability in this case.

Neither is this a case where I would impose liability based upon Valent's silence about the dye tests. It is true that fraud may be established where there is a misrepresentation that is innocently made, if the representation relates to a material matter to the transaction. *Boyle v. Odell,* 413 Pa.Super. 562, 605 A.2d 1260 (1992). Again, however, I would not conclude that Valent has made any representation on this issue. Whether other individuals may have made false representations about the condition of the property is another issue. Valent did not.

Based upon the foregoing, I would conclude that Valent did not misrepresent the condition of the property, and, thus, would not hold Coldwell Banker liable under a theory of fraudulent misrepresentation. I therefore dissent.